# CHARLESTON.

HYRE *et al. v.* LAMBERT.

Submitted Sept. 15, 1898—Decided Dec. 17, 1898.

1 COMMISSIONER IN CHANCERY—*Appeal—Record.*

Where questions of fact are referred to and passed upon by a commissioner, and the findings of the commissioner are overruled and disaffirmed by the circuit court, the appellate court must determine for itself, from the facts and circumstances disclosed by the record, whether it will sustain the conclusion of the commissioner or that of the circuit court. (p. 727).

2. COMMISSIONER IN CHANCERY—*Appeal—Reversal.*

A case in which the appellate court, upon the facts and evidence reversed the action of the circuit court in overruling the findings of the commissioner and in sustaining exceptions taken to the commissioner's report. (p. 727).

Appeal from Circuit Court, Tucker County.

Bill by R. A. Hyre and J. S. Hyre. against James H. Lambert. Decree for defendant and plaintiffs appeal.

*Reversed.*

W. B. MAXWELL and J. F. HARDING, for appellants.

DAYTON & DAYTON and L. S. AUVIL, for appellee.

McWHORTER, JUDGE :

This cause was brought here by plaintiff Hyre on appeal from a decree in favor of defendant against plaintiff on settlement of partnership acounts. The decree was reversed (see 37 W. Va. 26, 16 S. E. 446), and cause remanded for further proceedings by recommittal to commissioner to retake, state and report such accounts. The circuit court acted on the suggestion of this Court as to facts to be reported, and referred the cause to commissioner John J. Adams, directing him to report as follows: (1) The amount of bonds, notes, and accounts that went into the hands of defendant, Lambert, to settle and collect; (2) what amount he collected or should have collected; (3) what amount he has properly paid out; (4) what amount remains uncollected, and with which he should not be charged; (5) what amount is insolvent, what barred by the statutes of limitations, or otherwise noncollectible; (6) what debts or liabilities, if any, unpaid, remain, of the firm, to persons who are not partners; (7) what advances (as distinguished from capital put in), if any, have been made by any partners to or for the firm. Appellant Hyre sued out execution against appellee, Lambert, for one hundred and seventy-eight dollars and twenty-nine cents, costs of appeal incurred in this court, when Lambert filed his bill against R. A. Hyre and Jacob S. Hyre, her husband, to enjoin the enforcement of the collection of said sum, alleging that there was due from Hyre a much greater sum, for which he was entitled to a decree in said cause upon a settlement of the partnership accounts for which Hyre had instituted the suit, and alleging the insolvency of said Hyre, and that the object and purpose was to collect the said judgment for costs before her liability to plaintiff could be ascertained and fixed by proper decree; and then by every means evade the payment of such decre and praying that defendants be enjoined and restrained from the collection of said costs, that the liability of said partnership due plaintiff might be ascertained and fixed by proper decree in said original cause, and that the judgment for costs might be set off against

said liability, and decree be rendered for plaintiff for residue and for general relief.   Injunction was granted as prayed for, March 8, 1893.   Defendants waived process, and on 22d of November, 1894, by leave of the court, filed their joint and separate answer to said bill, and moved to dissolve the injunction; the answer admitting the former decree against Rebecca A. Hyre, which had been re-. versed, and her judgment for costs, but denying most positively her insolvency, or her intention to collect costs and then evade payment of any amount which might be found due to plaintiff, and denying any indebtedness to plaintiff on a settlement of the partnership affairs, but averring, on the contrary, that on such settlement plaintiff was largely indebted to her, and averring that since the injunction was awarded in this cause the said suit to settle the partnership had been pending before one of the commissioners of the court, who had taken a large amount of proof and had sifted the case to the very "dregs," and had found the sum of $——— in favor of the respondent Rebecca A. Hyre, which amount respondent did not believe was the true amount due her, but that it should be a much larger amount, and referred to the commissioner's report, which she asked to be read with her answer, which report conclusively showed that she was entitled to have the injunction dissolved.   Commissioner Adams returned his report, which, leaving off the formal portion, is as follows:

Proceeding " to fully execute said order of reference, and to further audit and state and settle the partnership accounts between the plaintiff R. A. Hyre and the defendant, James H. Lambert, thereupon I ascertain and find as follows, to wit:

"From the testimony, which is somewhat conflicting, your commissioner finds that, in his opinion, a clear preponderance thereof sustains the items of account between said plaintiff and defendant, as follows: (1) The amount of bonds, notes, and accounts that went into the hands of defendant, Lambert, to be settled and collected (including the amount of $1,124 collected by him on the Dry Fork and Red Creek lumber contracts) I have ascertained to be $3,374.   (2) The amount he collected, or should have collected, I have ascertained to be $2,535,12.   (3) The amount

properly laid out by him I have ascertained to be $2,922.84. (4) The amount uncollected of said accounts, and with which said Lambert should not be charged, including insolvent, barred by statute, and otherwise noncollectible claims, I find to be $838.88. (5) I find there are no debts or liabilities remaining unpaid of the firm to persons who are not partners. (6) I further find that there is due from the defendant, Lambert, to the plaintiff, R. A. Hyre, individually, as formerly reported, a balance found due her at the February settlement, 1885, of $200; also a settlement made August 15, 1885, a balance of $64.83; total, $264.83.

"From the foregoing, I find the accounts, more briefly stated, to be as follows: Amount of bonds, notes, and accounts that went into the hands of said Lambert to be settled and collected as above stated, $3,374; less amount of uncollected notes, accounts, etc., as above stated, $838.88; leaving amount in hands of said Lambert to be accounted for, $2,535.12; amount properly paid out by said Lambert on firm debts as aforesaid, $2,922.84; balance due said Lambert from the firm of Lambert & Hyre, $387.72; one-half to be paid, Mrs. Hyre to said Lambert, $193.86; amount due from said Lambert to Mrs. Hyre, individually, and as formerly found and reported as above stated, $264.83; balance now found due from said Lambert to Mrs. R. A. Hyre, $70.97.

"All of which is respectfully submitted to the court this 29th day of September, 1894.    Jno. J. Adams, Commissioner."

To this report he added the following statements made at the request of the counsel for the parties, which statements, together with exceptions to said report indorsed by the parties, are as follows:

"At the request of counsel for the plaintiffs, I state and report said partnership accounts to be as follows: First. the amount of bonds, notes, and accounts that went into the hands of defendant, Lambert, to be settled and collected, I ascertain to be $3.374. Second. The amount he collected, or should have collected, I have ascertained to be $2,705.78. Third. The amount properly paid out by him I have found to be (uncertain and objected to) $2,856.64. Fourth. The amount uncollected of said accounts, and with

which said Lambert should not be charged, including insolvent, barred by statutes, and otherwise uncollectible claims, I find to be $668.22; and from undisputed items due from defendant, Lambert, to Mrs. Hyre, from former reports, $299.83. Fifth. I further find there are no debts or liabilities remaining unpaid of the firm to persons who are not partners.

"From the foregoing version of the plaintiffs. I find the said accounts, more briefly stated, to be as follows: Amount of bonds, notes, and accounts that went into the hands of James H. Lambert for collection, $3,374; amount of notes, accounts, etc., not collected or collectible, $668.22; amount of notes, accounts, etc., collected by said Lambert and to be accounted for, $2,705.78; amount of debts properly paid by said Lambert for the firm of Lambert & Hyre, $2,856.64; amount due Lambert from said firm, $150.86; one-half of this last-named sum due from Mrs. Hyre to Lambert, $75.43; amount due from said Lambert to Mrs. Hyre, individually, at the time of dissolution, on account of undisputed items due Mrs. Hyre, as shown by former reports herein, $299.83; balance now found due from said Lambert to Mrs. Hyre, $224.40.

"And, at the instance and request of counsel for defendant, Lambert, I further state and report said partnership accounts to be as follows: First. The amount of bonds, notes, and accounts that went into the hands of James H. Lambert to settle and collect I ascertain to be $2,423.88. Second. The amount he collected, or should have collected, I find to be $1,518.60. Third. The amount properly paid out by him I have found to be $2,993.24. Fourth. The amount uncollected of said accounts, and with which Lambert should not be charged, including insolvent, barred by statute, and otherwise noncollectible claims, I find to be $905.28. Fifth. I further find there are no debts or liabilities remaining unpaid of the firm to persons who are not partners.

"From the foregoing version by the defendent, I find the the said accounts, more briefly stated, to be as follows:

"Amount of bonds, notes, and accounts that went into the hands of said Lambert for collection, I find to be $2.423.88; amount of notes, accounts, etc., collected by him,

$1,518.60; amount with which said Lambert should not be charged, $905.28; total, $2,423.88.

"Amount of firm debts properly paid by said Lambert, $2,993.24; from which deduct total amount of collections, $1,518.60; leaving a balance paid by said Lambert for the firm out of his own private fund of $1,474.64; one-half of which balance should be charged to defendant Hyre, $737.32, subject to credits as follows:

"Amount of costs of the supreme court, $174.89; amount of balance found due Mrs. Hyre at the August settlement, 1885, $64.83; total, $239.72.

"Balance due Lambert at this date, $497.60.

"All of which is respectfully submitted to the court this the 20th day of September, 1894. John J. Adams, Commissioner.

"And now, on this day, to-wit, Monday, the 1st day of October, 1894, I further report to the court that, after the completion of the foregoing statement and report, I retained the same in my office ten days for inspection and exceptions thereto by any person interested therein, during which time the plaintiff R. A. Hyre, by her counsel, Maxwell & Harding, as well as the defendant, James H. Lambert, by his counsel, Dayton & Auvil, each filed exceptions in writing thereto; which several exceptions, together with all the evidence and proofs filed before me, I now herewith return to the court. Given under my hand this the said 1st day of October, 1894. Jno. J. Adams, Commissioner."

Exceptions by Rebecca A. Hyre:

"The plaintiff Rebecca A. Hyre excepts to the report of Commissioner J. J. Adams made in the above-styled cause, and to be filed for the November term of the circuit court of Tucker County, 1894, and now in the office of said commissioner for examination, for the following reasons: First. Because said commissioner reports ·the amount of debts due to the firm of Lambert & Hyre, and heretofore turned over to Lambert for collection and disbursment which have turned out to be uncollectible and worthless, at the sum of $838.88, when the proofs filed before him clearly show that this sum could not possibly exceed $668.22, and even a much less sum than this is sustained

by the evidence.   Second.  Because by said report said commissioner reports the assets or funds coming into said Lambert's hands to be disbursed for the benefit of said firm at the sum of $2,535.12, when in fact he actually collected and should be charged with at least $2,705.78, and even more than this sum is proven by a preponderence of the evidence filed.   Third. Because by said report said commissioner reports the amount properly paid out by said Lambert upon the debts assigned said firm at $2,922.84, when the evidence clearly shows that at most he only paid out the sum of $2,856.64, and much of this amount rests on such doubtful and contradictory evidence that it ought not to be sustained.   Fourth.  Because by said report said commissioner has not allowed her credit for $35, the price of one cow, hereinbefore reported, passed upon, and not excepted to.   Fifth.  Because by said report said commissioner reports a balance due from said Lambert to said R. A. Hyre, of $70.97 only, and that, too, without interest, when, in fact, under the evidence filed before said commissioner, she should recover at least the sum of $224.40, with interest from July 25, 1889.   Rebecca A. Hyre, by counsel.   Maxwell & Harding, Attys."

Defendant's exceptions:

"The defendant James H. Lambert, excepts to the confirmation of Commissioner John J. Adams' report made in said cause of date the —— day of September, 1894:   (1) Because the said commissioner charges the defendant, Lambert with the sum of $3,374 of notes, accounts, etc., when the proof no where shows more than the sum of $2,423.88 worth of accounts, notes, etc., with which he should be charged.   (2) Because said commissioner allows to the plaintiff $200, as and at the February settlement between said partners, when a preponderence of the proof shows that said amount was carried into the August settlement, 1885, which was a full and complete settlement of all the individual transactions between said partners of H. Lee Nester, J. H. Lambert, J. B. Lambert, and C. C. Lambert.   (3) Because the commissioner considered the deposition taken by the plaintiff (in making up said report) at Justice Coberly's, in Randolph County, on the 27th day of August, 1894, and at G. W. Summerfield's residence on the

29th day of August, 1894, when the defendant, James H. Lambert, had no notice of the taking of the same. 4) Because said commissioner gave due weight and credit to the deposition of Jacob G. Flanagan in his findings, when he should have discarded said statements altogether, as said witness was successfully impeached before said commissioner. (5) Because said commissioner charges said defendant with $1,125 collected on lumber after dissolution of said firm, when the proof shows that $200 of said sum has been collected before the dissolution of said partnership, and applied upon the debts of said firm, and, if charged to defendant, defendant should have had credit for more, which said commissioner wholly disallows. (6) Because said report is erroneous in many other respects, and prays that the proofs, books, evidence, etc., before said commissioner be turned into court with report.    James H. Lambert, by Counsel.   Dayton & Auvil, Attys.

"The defendant, Jas. H. Lambert, excepts to the special finding of the commissioner at the instance of the plaintiffs, and to the finding at his own instance, and insists the only true statement of the partnership is that found at the instance of the defendant.    James H. Lambert, by Counsel.   Dayton & Auvil."

On the 28th day of November, 1894, the cause was heard. The court overruled all the exceptions of plaintiff Hyre, and sustained all the exceptions of defendant, Lambert; adopted the statement made by Commissioner Adams at the request of defendant Lambert; entered a decree in his favor against Rebecca A. Hyre for four hundred and ninety-seven dollars and sixty cents, with interest from October 20, 1894, and perpetuated the injunction, and decreed in favor of Lambert for costs of the injunction proceedings, and that the said sum of four hundred and ninety-seven dollars and sixty cents, together with the costs incurred by said Lambert in said two causes, are a lien upon said Rebecca A. Hyre's separate personal property, and a charge upon the rents, issues, and profits of her separate real estate, if any such personal or real estate she has; from which decree Rebecca A. Hyre, and J. S. Hyre appealed to this Court, and assign as error, first,

that the court erred in overruling plaintiff's exceptions to
the report of Commissioner Adams. Defendant, Lam-
bert, filed a "statement of amount remaining uncollected,
and with which Lambert should not be charged, insolvent
and barred by statute," amounting to one thousand dol-
lars and ninety cents. The commissioner took the testi-
mony of various witnesses as to the payment of some of
these claims, and as to their solvency; the time of their
payment, if paid,—whether before or after the dissolution
of the partnership; and, after considering the evidence, he
reduced the aggregate to the sum of eight hundred and
thirty-eight dollars and eighty-eight cents. From an ex-
amination of the evidence touching the several items of
account in dispute, I have no doubt that the commissioner
arrived at about the right conclusion as to this item of his
report. Defendant, Lambert, himself, while he claims in
his deposition the amount to be one thousand dollars and
ninety cents, admits in the statement made at his request
by the commissioner, that the amount should be reduced
to nine hundred and five dollars and twenty-eight cents.

Appellant's second exception involves the question
raised by appellee's first exception. The commissioner
takes as a basis three thousand three hundred and seventy-
four dollars as amount of bonds, notes and accounts that
went into the hands of Lambert to be settled and collected,
from which deducting above item of eight hundred and
thirty-eight dollars and eighty-eight cents, leaves two
thousand five hundred and thirty-five dollars and twelve
cents amount of assets that went into the hands of Lam-
bert. Hyre's exception claims that it should have been two
thousand seven hundred and five dollars and seventy-eight
cents, while Lambert, by exception No. 1, claims that the
three thousand three hundred and seventy-four dollars
should have been but two thousand four hundred and
twenty-three dollars and eighty-eight cents. This amount
claimed by Lambert, however, fails to include the amount
of the Red Creek lumber contract, the proceeds of which
amounted, according to the various witnesses axamined
concerning it, to from nine hundred and twenty-five dol-
lars to one thousand two hundred dollars, and in the com-
missioner's report formerly filed in the cause, and copied

in the opinion (37 W. Va. 32, 16 S. E. 446), was stated at one thousand one hundred and twenty-four dollars "as shown by deposition of Lambert." Taking the smallest amount, nine hundred and twenty-five dollars, and adding it to the two thousand four hundred and twenty-three dollars and eighty-eight cents, as claimed by Lambert, makes the sum of three thousand three hundred and forty-eight dollars and eighty-eight cents, being only twenty-five dollars and twelve cents short of the amount stated by the commissioner. I think plaintiffs' second and defendant's first exceptions should both be overruled.

Plaintiffs' third exception goes to a question of sixty-six dollars and twenty cents difference between the amount allowed by the commissioner to defendant as paid out on debts of the firm and the amount plaintiffs claim ought to have been allowed. This difference is made up of small sums, upon which the evidence is conflicting and uncertain, and the benefit of the doubt should be given to commissioner, who stands between the parties, and should be, and evidently was, trying to get at the truth of the matter.

Plaintiffs' fourth exception is as to thirty-five dollars, price of a cow, which was proved as reported in commissioner's former report, and unexcepted to, and the exception should be sustained.

The fifth exception of plaintiffs, in so far as it claimed the right to judgment for at least two hundred and twenty-four dollars and forty cents was properly overruled.

Upon defendant's second exception, as to the two hundred dollars found due plaintiffs at February settlement, 1885, and allowed to plaintiffs, and as claimed by the defendant to have been carried into the settlement of August 15, 1885, the evidence is conflicting; some witnesses testify positively and squarely that the item of two hundred dollars was carried into the settlement of Ausust 15th, while others testified as positively that it was not. In the commissioner's report of former date, and copied in the opinion of this Court in 37 W. Va. 32, (16 S. E. 446), as to this item, it was held by the commissioner, as he holds in in this last report, that it was not carried into the late settlement, and no exception was made to the report by defendant for that reaaon, and he took his decree allowing

that claim.    The commissioner was warranted in allowing it to plaintiffs, and exception two should have been over-ruled. ⋅

The third exception of defendant relates to notice to take depositions, upon the depositions taken at G. W. Sum-merfield's, not at J. W. Summerfield's, as specified in the notice, "because the defendant had no notice of the taking of any depositions except of Solomon Flanagan, Enos G. Carr, and J. W. Flanagan." When the depositions of said Flanagans do not appear to have been taken, and that Enos G. Walker is taken as the fifth deposition of about thirty or more short depositions, of about three to the page, taken to sustain the reputation for truth and veracity of plain-tiffs' witness Jacob G. Flanagan, whose reputation defend-ant had brought in question, it is difficult to conceive how defendant should have notice of one deposition grouped in some thirty, which would require perhaps five minutes each to take, and know nothing of the taking of the others. How far the commissioner gave weight to or considered such depositions does not appear. There is but little in the depositions complained of, aside from the bearing on the reputation of said witness to sustain it.

The fourth exception is that the commissioner gave due weight to the testimony of Jacob G. Flanagan, witness on behalf of plaintiffs.    Flanagan was plaintiffs' principal witness, apparently a man of very good standing in the community, trusted by his neighbors with the responsible position of assessor.    He had given testimony in this cause in October, 1887, and the cause was heard upon his testi-mony.    The thought of impeaching him seems to have been a recent thought.    Jacob Wolfred says his reputation is not very good, and would not from that reputation be-lieve him on oath, especially if he was interested in the matter in any way.    John T. Wolfred is acquainted with his reputation; "it's nothing extra good."    In answer to question, "From that reputation would you believe him on oath?" he says, "If his interest was at stake, and he was under the influence of liquor, I would be inclined to dis-pute."    Witness G. W. Snyder, referring to Flanagan's reputation:    "Well sir, I would say it was bad.    Q. From that reputation would you believe him on oath?    A.    No,

sir." Defendant then introduces two of his sons, L. D. and J. B. Lambert, who say, respectively, as to his reputation, "It is not good," and "It is bad," and both say they could not believe him on oath. J. B. Lambert, when asked if he and Flanagan were friendly or he had had trouble with him, answered, "We had some words, but still I would not vary on oath for that." Snyder is the only one of the first three witnesses who says unqualifiedly that his reputation is bad. I know it is a delicate matter for a man to take the witness stand and testify that the reputation of his neighbor for truth and veracity is bad; but, if it is notoriously bad, after one or two reputable and respectable citizens have so testified it is usually not much trouble to find others at hand to "swell the chorus." I think the attempt to impeach Flanagan a very lame one, and the commissioner was at liberty to give his testimony such weight as seemed right to him. .

Defendant's fifth exception is that the commissioner had charged him with one thousand one hundred and twenty-five dollars collected on lumber after dissolution of the firm, when the proof shows that two hundred dollars of said sum had been collected before the dissolution of the partnership, and applied on firm debts. I think quite a sufficient reply to that is that in the original report of the commissioner, which was the basis of defendant's decree before brought to this Court, the very first item charged to defendant was, "Amount collected on the Red Creek and Dry Fork lumber contracts from the Hulings Lumber Company, as shown in the deposition of said Lambert, $1,124." Said item was proved by his own deposition, allowed by the commissioner, no exception to the report, and defendant's decree based on it.

As to the sixth exception, praying that the proofs, books, evidence, etc., before the commissioner, be returned into court with his report, section 7, chapter 124, Code, as amended by chapter 8, Acts 1895, requires the commissioner "with his report, to return the evidence filed in the case, including all the evidence taken upon the execution of the reference," which the certificate of the commissioner shows he did in this cause.

Defendant's seventh exception insists that "the only

true statement of the partnership is that found at the instance of the defendant," and the court seems to have thoroughly ignored the findings of its commissioner, and adopted the account made up by the defendant, very much of which is unsustained except by the evidence alone of the defendant, and even he is not clear in parts of his evidence. It is shown that when the partnership was dissolved the books of the firm were placed in the hands of defendant, where they remained for some time, until they were called for in this cause; and when they came from his hands they were so mutilated that it would be impossible to make a statement showing the amount of accounts which were upon them when they were given over in August, 1885. Several half leaves, and some whole leaves, were out of the books, and figuring and writing in the books which were not in them when they were calculated and footed up before. J. S. Hyre testified that with reasonable diligence all the notes, bonds, and accounts belonging to the firm, and turned over to Lambert, amounting to some two thousand two hundred and fifty dollars could have been collected, except about twenty-five dollars or thirty dollars; and J. G. Flanagan who was familiar with them, did not think there was over about twenty dollars which could not be collected. In *Graham* v. *Graham*, 21 W. Va. 698, it is held that, "where questions of fact are submitted to a commissioner in chancery, his findings thereon should be fully sustained, unless the court is fully satisfied that the evidence before the commissioner does not warrant them;" and it is further held when the decree of the court below approves such findings, this Court will not, except in a plain case, reverse such decree. "Where question of fact are referred to and passed upon by a commissioner, and the findings of the commissioner are overruled and disaffirmed by the circuit court, the appellate court must determine for itself, from the facts and circumstances disclosed by the record, whether it will sustain the conclusion of the commissioner or that of the circuit court." *Root* v. *Kilbreth*, 32 W. Va. 585, (9 S. E. 627).

On a review of all the evidence and the record, I am of opinion that the commissioner was about as nearly right as the character of the case would enable one to get, and that

his finding in favor of plaintiff of seventy dollars and nine-ty-seven cents should be approved, with the sum of thirty-five dollars added, making the sum of one hunderd and five Dollars and ninety-seven cents in favor of plaintiff Rebecca A. Hyre against the defendant, Jas. H. Lambert; that upon the filing of the answer of Rebecca A. Hyre and James S. Hyre to the bill of complaint of James H. Lambert; deny-ing all the material allegations of the bill and moving to dissolved the injunction, said injunction should have been dissolved and the bill dismissed. *Schoonover* v. *Bright*, 24 W. Va. 698; *Farland* v. *Wood*, 35 W. Va. 458, (14 S. E. 140, Syl. point 2).

For the reasons herein contained, the decree of the cir-cuit court is reversed and annulled, and the order perpet-uating the injunction is reversed and set aside. It clearly appears from the record that there is no indebtedness against the firm ; and, the court proceeding to render such decree as the circuit court should have render, it is ad-judged, ordered and decreed that the plaintiff Rebecca A. Hyre do recover of the defendant, James H. Lambert, the sum of one hundred and five dollars and ninety-seven cents, with interest thereon from October 20, 1894, until paid, and the costs of the prosecution of her suit by her expended in the circuit court; and it is further adjudged, ordered and decreed that the injunction awarded James H. Lambert against J. S. Hyre and Rebecca A. Hyre be, and the same is dissolved, and the bill dismissed, and that the de-fendants therein recover against the plaintiff, James H. Lambert, their costs by them about their defense in that behalf expended in said circuit court,

*Reversed,*