# CHARLESTON

## PENNINGTON v. GILLASPIE.

Submitted January 22, 1908.   Decided February 11, 1908.

1. STATUTES—*Construction—Construction With Reference to Judicial Construction.*

It is presumed that the legislature, in re-enacting a statute that has been judicially construed, substantially in its original terms, intended it to have effect thereafter as so construed by the courts. (p. 545.)

2. SAME.

This Court having decided in the case of *Pegram* v. *Stortz*, 31 W. Va. 220, that, in an action by a widow against a licensed retailer of spirituous liquors, under section 16 of chapter 107 of the Acts of 1877, no damage can be given her because of injury to her means of support by the death of her husband caused by intoxication, the consequence of liquors illegally furnished or sold to him by the defendant, and the legislature having, since the rendition of said decision, re enacted said statute substantially in the original terms thereof, it is presumed that that body intended it to have effect and be enforced as so previously construed. (p. 546.)

3. COURTS—*Effect of Overruling of Previous Decision in Part.*

The overruling of a decision as to one proposition of law, declared by it, does not argue unsoundness therein as to other separate and distinct propositions enunciated thereby. (p. 545.)

4. PLEADING—*Declaration—Immaterial Allegations—Effect.* .

A declaration,· alleging matter sufficient to constitute a cause of action, is not vitiated by the incorporation therein of immaterial matter. The immaterial allegations will be disregarded as surplusage. (p. 548.)

5. INTOXICATING LIQUOR—*Civil Damage Laws—Evidence—Admissibility.*

Though a declaration states a claim for damages under section 26 of chapter 32 of the Code of 1906, for only one year preceding the date of commencement of the action, evidence of habitual drunkenness, on the part of the person to whom the illegal sales were made, prior to said year and continuance thereof to the time of the sales complained of, and knowledge on the part of the seller, is .admissible. (p. 549.)

6. SAME—*Sales by Agent.*

Under a declaration in such cases, alleging sales to have been made by the defendant, evidence of sales made by his bar-tender, clerk, servant or agent is admissible. (p. 550.)

7. SAME—*Damages—Exemplary.* .

In such action, circumstances of aggravation are admissible in evidence to increase the damages. (p. 551.)

8. PLEADING—*Plea in Abatement--Jurisdiction.*

If a declaration shows jurisdiction on its face, no exception to the jurisdiction of the court can be taken otherwise than by plea in abatement. (p. 551.)

9. INTOXICATING LIQUORS—*Civil Damage Laws.*

A cause of action, arising under section 26 of chapter 32 of the Code of 1906, is transitory and it need not appear that it arose in the county in which the action was brought. (p. 552.)

Error to Circuit Court, Tucker County.

Action by Diannah J. Pennington against C. D. Gillaspie. Judgment for plaintiff, and defendant brings error. ·

*Reversed. New Trial Awarded.*

Cunningham & Stallings, George P. Shirley and Malcolm Jackson, for plaintiff in error. ·

J. P. Scott and J. Wm. Harmon, for ·defendant in error.

Poffenbarger, President:

Assigning as grounds of error the overruling of a demurrer to the declaration, a motion to set aside the verdict, motions to exclude the evidence, objections to the introduction of evidence, the giving of certain instructions and refusal to give others, C. D. Gillaspie, a saloon keeper, complains of a judgment for $5,500.00, rendered against him and in favor of Diannah J. Pennington, by the circuit court of Tucker county, in an action brought under the civil damage statute, section 20 of chapter 32, Code of 1899, section 26 of chapter 32, as amended and re-enacted by the Acts of 1895, section 938, Code of 1906.

The plaintiff is the widow of A. J. Pennington who, it is alleged, was killed on a logging railroad, while in a state of intoxication, induced by use of liquors sold to him by the defendant; and the second count of·the declaration demands damages for injury to plaintiff's means of support, occasioned by the death of her husband, in the following terms: "The said A. J. Pennington became and was greatly intoxicated, and while so intoxicated, the said A. J. Pennington wandered along and over the log railway leading from the saloon of the said defendant at Brooklynn Heights to the home of the said Pennington about one half mile distant from the said saloon, and while he the said Pennington was on said route, and on the night of the day last mentioned, he the said Pennington, while so intoxicated, and in consequence of his said intoxication, was run over by a log engine· on said railway, and killed, whereby the said defendant, by causing such intoxication and consequent death, injured the plaintiff in her means of support, all in consequence of the unlawful acts of the said defendant in furnishing and selling to the said A. J. Pennington intoxicating liquors aforesaid, whereby the said

plaintiff's husband became and was intoxicated as aforesaid." This count contains no allegation of injury other than that resulting from the death of her husband by reason of the alleged unlawful sales made to him. Under it, evidence tending to prove death, resulting from unlawful sales, was admitted, and instructions given by the court over the objection of the defendant, telling the jury, in substance, that they might include in their verdict damages for the loss of the support of her husband for such time as he would probably have lived; and the amount included for such damages admittedly constitutes by far the greater part of the damages assessed. The alleged right to such damages, therefore, constitutes the principal matter of controversy and the determination thereof, will govern the disposition of many of the numerous assignments of error.

The rulings of the court, respecting injury to the plaintiff's means of support by the death of her husband, were directly contrary to principles declared by this Court in *Pegram* v. *Stortz*, 31 W. Va. 220. Denying the soundness and binding force of that decision, the trial court ignored it. In that case, similar in all material respects to this, and governed by the same statute, this Court held as follows in point 3 of the syllabus: "In such a case, no damage can be given because of injury to her means of support by the death of her husband caused by his intoxication, the consequence of liquors illegally furnished or sold to him by the defendant." In the opinion, the Court said it was obvious, from the amount of the recovery, viewed in the light of the evidence, that the verdict must have either included damages to the plaintiff's means of support by reason of the drowning of her husband, or what are called exemplary damages; and proceeded upon the inquiry as to whether either of these two matters constituted an element of damages recoverable under the statute, and returned a negative answer to both propositions. As to the latter, the decision has since been overruled in two cases, *Mayer* v. *Frobe*, 40 W. Va. 246, *McMaster* v. *Dyer*, 44 W. Va. 644; but as to the first, namely, that recovery cannot be had for injury to means of support by reason of the death of the party to whom illegal sales have been made, it has not been overruled or in any way questioned by any subsequent decision. That the decision has been overruled as to one of

the points decided argues nothing against its soundness in respect to other propositions enunciated by it.   On this question, the court reviewed the earlier cases decided by the New York, Illinois, Iowa and Nebraska courts, holding the seller liable for injury ocasioned by the death of the purchaser, on the one hand, and the Massachusetts and Ohio cases, holding the contrary, on the other hand, and adopted the reasoning of the latter, as being better sustained by legal principles than the others.  At that time, the Court was composed of Judges Green, Johnson, Snyder and Woods, all very able and learned men, and the opinion was written by Judge Green, then at the zenith of his mental power and judicial career.   The opinion is an able and carefully prepared one, and has since been acquiesced in by the legal profession and the people.   The statute has been twice re-enacted by the legislature, since the rendition thereof, without any change as to the bases of liability, Acts 1904, chapter 3, Acts 1905, chapter 35, and the judicial construction given it by the decision in *Pegram* v. *Stortz* thereby presumptively, at least, adopted by the legislature.  *Brown* v. *Randolph County*, 45 W. Va. 727; *Simms* v. *Daniel*, 49 W. Va. 554, (syl. 9); *State* v. *Cornell*, 54 Neb. 647. *Barrett's Appeal*, 73 Conn. 288; *Frink* v. *Pond*, 46 N. H. 125; *Fitzpatrick* v. *Chicago &c. Co.*, 139 Ill. 248; *Sessions* v. *Roanoka*, 145 U. S. 29; *Mangus* v. *McClelland*, 93 Va. 786; *Swift & Co.* v. *Wood*, 103 Va. 494.   In some of these decisions, it has been declared that the re-enactment of a statute which has received a judicial construction is an adoption of that construction by the legislature, a manifestation of legislative intent that the statute shall thereafter have effect as so construed and not otherwise, and that the courts cannot thereafter give it a different construction.   It suffices the purposes of this case to say it is well settled, as a rule of construction, that there is a presumption of intent, on the part of the legislature, to adopt the judicial construction, and this rule extends not only to statutes construed by the courts of the states in which they were enacted, but also to statutes of one state adopted by the legislature of another after having been judicially construed by the courts of the states from which they were adopted. Some of the cases above cited say the adoption of the previous judicial construction is conclusive, and this seems to

accord with the view that courts are bound by the legal rules of construction, but we find it unnecessary to enter upon the inquiry suggested. We perceive no reason why we should not observe a well settled rule of construction, although it may not be absolutely obligatory upon us in all cases and under all circumstances.

Though it is insisted that the statute has been materially changed since the decision in question was rendered, we do not think it has. Section 16 of chapter 107, Acts 1877, under which *Pegram* v. *Stortz* arose, required the service of a notice, (since dispensed with,) and then provided as follows: "And thereafter, if the person so served with such notice shall, by himself or another, sell or furnish such liquors to the person named in said notice, and by reason thereof the person to whom such liquor is sold or furnished shall become intoxicated, and, while in that condition, do damage to another, or shall, by reason of such intoxication, injure any person in his or her means of support who may have the legal right to look to him therefor, upon due proof that such liquors were sold or furnished as aforesaid, and that the person mentioned in said notice was, at the time of the service thereof, in the habit of drinking to intoxication, an action may be maintained by the husband, wife, child, parent or guardian of the person mentioned in said notice, or other person injured by him as aforesaid, against the person selling or furnishing him such liquors, as well as for all such damages as the plaintiff has sustained by reason of the selling or giving of such liquors." The same statute as amended and re-enacted by section 20 of chapter 29 of the Acts of 1887, and the Acts of 1904 and 1905, provides as follows: "Every husband, wife, child, parent, guardian, employer or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her name severally or jointly, against any person who shall, by unlawfully selling or giving intoxicating liquors, have caused intoxication, in whole or in part, of such person or persons."

Thus amended, the statute is simplified, stripped of verbiage, and dispenses with notice as a prerequisite to a cause of action, but, in other respects, remains the same in meaning

and legal effect. The phrase "in consequence of the intoxication or otherwise" has been added, but this works no change in the object or purpose of the act or basis of liability. This is made plain and distinct by the opinion of Judge Green. He says emphatically the meaning of the old statute without it was the same as it would have been, had it contained it, as will appear from the following quotation therefrom: "In reaching this conclusion, I have regarded our statute as substantially the same as the statute of New York and the other States whose statutes is similar thereto, though the counsel for the appellant insists that it is materially different, and that under our statute the husband must actively do some act from which injury results to the means of support of his wife before she has any right of action; the language of our statute being, 'while intoxicated, do damage to another, or shall, by reason of such intoxication, injure any person in his or her means of support;' which it is insisted should be interpreted, do some act whereby he inflicts an injury on his wife or others in their means of support. I am strongly inclined to think that there is no substantial difference, in this respect, between the language and meaning of the New York and other similar statutes and that of our State. The supposed difference is that the New York statute and that of the other States say, 'if certain persons named are injured in their means of support in consequence of the intoxication,' &c., and our statute says, or 'shall by reason of such intoxication (that is, in consequence of the intoxication,) injure any person in his or her means of support.' Now, to my mind, the language, 'shall be injured in consequence of the intoxication,' should be interpreted to mean the same as, 'if he shall, in consequence of the intoxication, injure him or her in her means of support.' All that is required by the language in our statute, as in the statute of other States, is that certain persons shall be injured, in consequence of the intoxication, in their means of support. An ingenious argument is made by the appellant's counsel to show that, by our act, something must be actively done by the intoxicated husband to injure the wife in her means of support, while, under the wording of the other statutes, nothing need be done by the intoxicated husband to injure the wife in her means of support; but it will suffice if her means of support are injured in consequence

of his intoxication, though he has actively done nothing to injure her in her means of support.   Such a distinction will not bear investigation; for surely, under our statute, if the injury to the wife's means of support is produced simply by incapacitating the husband to do anything in the way of making a living because of the husband's intoxication, this is, in the meaning of our law, 'injuring her in the means of her support,' though it is effected simply by his doing nothing, being incapacitated from doing any labor by his intoxication.   In other words, the language of our statute, 'he may injure her in her means of support' as effectually by doing nothing, because of his intoxication, as by actively doing something to injure her in her means of support.  There is, therefore, I think, no such difference in the meaning of the statutes of these other States in their meaning and that of our statute as the appellants's counsel has insisted upon in his argument.''

The demurrer was general, denying the sufficiency in law of the entire declaration, not special, challenging the sufficiency of each count.  Therefore, the insufficiency of the second count does not vitiate it as a whole.  The first count contains some allegations that are said to be improper, but if it alleges sufficient matter of fact to warrant a recovery, all immaterial allegations may be disregarded as surplusage, and all injury therefrom at the hands of the jury was preventable by objection to evidence offered to prove them and by application for proper instructions, forbidding allowance of damages based thereon.  *Pegram* v. *Stortz*, 31 W. Va. 220; *Thomas* v. *Electrical Co.*, 54 W. Va. 395; *Patton* v. *Elk River Co.*, 13 W. Va. 427.  Inconsistency between the two counts in some slight particulars is complained of, but this amounts to nothing more than variation of statement of details, not in any sense, repugnant to the rules of pleading. A charge of insufficiency is based on the use of the word "furnishing" instead of the statutory word "giving," the statute making the licensee liable for either selling or giving intoxicating liquors in certain cases.  The allegation is that the defendant sold to the deceased, and then that the defendant was "so furnishing" liquors to him, and later "sold and furnished" him liquors.  The averment of unlawful selling is amply sufficient, and there is nothing in this objec-

tion. Our conclusion is the same as to the failure to aver that sales were made by defendant's clerks or bar-tenders. What evidence is admissible under the declaration is an entirely different matter. After having alleged unlawful sales, the first count of the declaration avers that "in consequence of such sales and so furnishing intoxicating liquors to the said A. J. Pennington, the said A. J. Pennington became and was greatly intoxicated, and while so intoxicated, the said A. J. Pennington neglected his work and squandered his money, and thereby injured the plaintiff in her means of support, and also while so intoxicated injured the plaintiff in her person, in this: that he abused, cursed, ill-treated and threatened the life of the said plaintiff and caused her great humiliation and grief;" and avers no injury in any other way or to any other extent. *Pegram* v. *Stortz* holds: "It is sufficient, in a declaration in such a case, to allege generally, that the plaintiff was injured in her means of support in consequance of such intoxication; but under such a declaration the plaintiff could prove only the extent of the injury to her means of support which she had sustained as the necessary consequence of her husband's intoxication, as that resulting from his inability to labor while so intoxicated." The allegations above quoted, though not exactly accordant in terms with this rule, state a cause of action under it, for they say the plaintiff was injured in her means of support by reason of the unlawful sales complained of. Under the principles introduced by these cases, we think it was competent also to prove, and, therefore proper to allege, conduct of the husband inflicting humiliation and grief upon the wife. It is matter of aggravation growing directly out of the wanton act of the defendant. *Radly* v. *Seider*, 99 Mich. 431; *Lucker* v. *Liske*, 111 Mich. 683. No omission of any material fact has been brought to our attention and we perceive none. We conclude, therefore, that the demurrer was properly overruled.

The action was commenced July 23, 1906, and the declaration legally claims damages for injuries for the preceding one year. Over the objection of the defendant, evidence tending to prove habitual drunkenness on the part of the deceased prior to the year for which damages are claimed, and continuation thereof up until the sales complained of were made,

and knowledge thereof on the part of the defendant, was admitted. This evidence was admissible for the purpose of proving that the defendant knew the deceased was an habitual drunkard at the time he made sales to him within the year for which recovery of damages is sought. It is immaterial when the habit was acquired, provided it existed when the sales were made and the seller had knowledge of it.

Plaintiff's instruction No. 1 is complained of because it fails to limit the damages recoverable to those arising from sales made within one year prior to the commencement of the action. Such limitation should have been put on. An attempt to do so in another instruction is likely the reason the court gave this one without it. But the other instruction, No. 11, was bad for another reason which will be stated, and should not itself have been given. Therefore, we conclude that said instruction No. 1 was improperly given. Plaintiff's instructions Nos. 2, 3, 6, 7, 8, 9, 10 and 11 should all have been refused, because they predicate a right to recover damages upon the loss of life of the plaintiff's husband, occasioned by the alleged illegal sales. Under the construction given the statute by the decision in *Pegram* v. *Stortz*, such damages are not recoverable. Exceptions to plaintiff's instructions Nos. 4 and 5 are based upon the allowance by them of damages arising from sales made by the bar-tender of the defendant at his place of businesss because the declaration does not aver sales made by anybody other than the defendant himself. This objection is groundless. Sales made by the defendant's clerk, agent or servant are deemed in law to have been made by him, and he is presumed to have had knowledge thereof. It would be extremely and unnecessarily burdensome to require persons, having occasion to sue under this statute, to specify and prove the particular agent or servant by whom each sale was made. It would be almost impossible to do so in many instances. Besides, no rule of practice requires it in other cases. "An indictment or complaint alleging an unlawful sale of liquor by defendant is supported by proof that he sold it by his clerk, servant or agent." 23 Cyc. 257, citing a number of authorities. The rules governing civil and criminal actions are, generally speaking, the same, and it is uniform practice in this state to prove sales by bar-tenders under indictments against licens-

ees. No further objection to these two instructions is specified and we perceive no error in the giving thereof. Instruction No. 11, limiting the time for which damages could be allowed, would have been proper had it not authorized recovery for injury to means of future support by reason of sales made after the date therein specified. This plainly imports the right to recover damages resulting from the death of the plaintiff's husband.

Defendant's instruction No. 1 was properly refused because it inhibited the assessment of exemplary damages. His instructions Nos. 2, 8, 9 and 14, forbidding recovery of damages, occasioned by the death of of plaintiff's husband, were improperly refused. His instructions Nos. 6, 7 and 13 related to an immaterial matter; the proximate cause of the death of plaintiff's husband, and were therefore properly refused. His instructions Nos. 3 and 4 were properly refused for the reason that they limit the recovery for injury to plaintiff's means of support, thereby precluding recovery of exemplary damages. His instruction No. 16, denying right of recovery for injury resulting from sales not made by the defendant should obviously have been given. That it named the defendant personally is no ground of objection. The plaintiff could have had an instruction, defining C. D. Gillaspie as embracing, for the purposes of the sales and this action, his servants and agents. *State* v. *Trail*, 59 W. Va. 175, applies this principle. His instruction No. 17 was properly refused. It denied right of recovery for sales made by the agents or clerks of the defendant. His instruction No. 18, telling the jury that they could not find for the plaintiff, unless they believed, from the evidence, that the sales complained of were made in Tucker county, was properly refused. If the declaration in a civil action shows jurisdiction on its face, no exception for want of jurisdiction can be considered, unless it be taken by plea in abatement. Code, chapter 125, section 116; *Snyder* v. *Philadelphia Co.*, 54 W. Va. 149. By his failure to raise this question in the manner prescribed by the Code, the defendant waived it. *Osborn* v. *Taylor*, 13 Grat. 120; *Telegraph Co.* v. *Hobson Co.*, 15 Grat. 122; *Quarrier* v. *Quarrier*, 10 W. Va. 507; *Middleton* v. *White*, 5 W. Va. 572; *Bank* v. *Gettinger*, 3 W. Va. 309. Besides, the cause of action is no doubt transitory, and the place at which the sales

were made, therefore, immaterial. *Humphreys* v. *N. N. & M. V. Ry. Co.*, 33 W. Va. 1335. His instruction No. 5 telling the jury substantially that, if the deceased had long been in the habit of drinking to intoxication and before the defendant knew him or had a saloon at the place at which the sales in question were made, they should find for the defendant, was obviously improper. It was right in the teeth of the statute. It was an attempt to justify and defend by reliance upon the very thing which the statute says shall make a man liable, namely, knowingly selling to an habitual drunkard. His instruction No. 11, requiring the jury to find for the defendant if they believed from the evidence that the deceased had not, on the day of his death, drank to excess or intoxication, and had not theretofore been in the habit of drinking to intoxication, was properly refused. Though not drunk that day nor an habitual drunkard, there was evidence tending to prove sales to the deceased at other times within the year while he was intoxicated. His instruction No. 11 was properly refused, for it required the jury to find for him, notwithstanding they could have found from the evidence that sales were made to the deceased while he was intoxicated. That would have been an unlawful sale, although he was not an habitual drunkard. There was evidence tending to show that the deceased was intoxicated on the day of his death, and that sales had been made to him while he was in that condition.

There is much general complaint in the briefs, founded on the admission of evidence that is said not to have been admissible, in addition to that which has been herein considered. But it is not specified-by incorporation in separate bills of exception, or particular reference thereto in the briefs. Under the rules governing procedure in this Court, we are not required to ferret out items of inadmissible evidence not specified. Enough has been said, however, to clearly indicate to counsel and the court below what is admissible and what inadmissible, and, if care is exercised on the new trial, the danger of erroneous action in this respect will be very slight.

The sufficiency of the evidence to sustain the verdict is challenged, but, as the judgment has to be reversed and a new trial allowed, for the errors herein stated, this ground of exception will not be considered.

For the errors herein pointed out, the judgment will be reversed, the verdict set aside, a new trial awarded, and the case remanded.

*Reversed.    New Trial Awarded.*

Brannon, Judge, (*concurring*):

I concur in the judgment rendered in this case with very great reluctance.   I do so only in deference to *Pegram* v. *Stortz*, 31 W. Va. 220, because, as a general rule, I respect and act upon the rule of *stare decisis.*   That case holds that a widow bereft of support by the death of her husband caused by intoxication from liquor unlawfully sold cannot maintain an action against the seller of such liquor.   As an original proposition I flatly demur to this holding.   In that case Judge Green's argumentation seems to have been upon the line that the action given by Code, chapter 32, section 20, is only for the *death* of the husband, and as the common law gave no action therefor to anybody, therefore he concluded that this statute did not intend to give action to any of the kin of a man whose death came from intoxicating liquors unlawfully sold to him, there being, as he thought, no words expressly changing the rule of the common law.   It is true that a person unlawfully wounded by another could sue that other while he lived; but that right of action in him during life died with his last breath, under the maxim of the common law, *actio personalis moritur cum persona,* a personal action dies with the person.   After his death, the authorities all agree, that no action for damages for an injury resulting in the death will lie by common law on the said principle that a personal action dies with the person.   1 Am. &. Eng. Ency. Law (2d ed.) 688. It takes a statute to give such action after death.   The case of *Pegram* v. *Stortz, supra,* holds that no such action for death from sales of liquor can be maintained under the said Code statute.   The case of *Pegram* v. *Stortz* seems to go on the idea that action under that statute is an action for the death dying with the person under the common law.   But does not that case forget that this statute gives action to certain kinsmen of the dead man by *reason of loss of support?* Judge Green's mind seems to have been running on the damage done to the deceased; whereas, this statute gives, for the first time, action to certain kin of

the dead man when they are injured by his death in their "means of support." It is not an action for a wrong to the deceased. It is an action given to persons who are deprived of support from his death. It is based on the right of such kin. "A civil damage law which provides for an action for injuries to means of support, creates a new right of action, and it is not necessary, to sustain such action, that the injury should be a common law injury or one before remediable by action." "It is generally held that the death of plaintiff's husband, resulting as the consequence of his intoxication, caused or contributed to by the liquor furnished him by defendant, is such an injury to her means of support as will enable her to maintain an action under the statute." 23 Cyc. 312, 313. The statute's purpose being to give damages for *loss of support*, where is the solid reason for saying that this right of support stops with death? It is conceded that while the husband lives unable to work, and thus unable to earn support for those dependent upon him, the wife or child may sue the wrongdoer, yet when the husband dies, the liability ends, though the need of support continues. Where is the reason of such a rule? Do you think such was ever the intention of the Legislature in the enactment of this statute?

Do not the widow and the child need support as well after the death of husband and parent as before? As the Maine court said in *Gardner* v. *Day*, 95 Me. 558, 50 Atl. 892: "We cannot agree to this proposition. We are unable to perceive any legal distinction, except in degree, between the temporary injury to a wife's means of support through the husband's inability to provide support by reason of some accident sustained while intoxicated, and the permanent injury suffered by her of the same nature by reason of the husband's death, resulting from his intoxication. In either case the injury is to her means of support by reason of his intoxication." We quote from 6 Am. & Eng. Ency. Law (2d ed.) 54, as follows: "Death.— The question wheather there can be a recovery under the civil damage statute for the death of any person, caused by the intoxication of himself or of another, has not been uniformly decided. In general, if death is the natural and legitimate result of such intoxication, and the plaintiff is thereby injured in his means of support, he may recover for the death. Otherwise, minor and temporary injuries to the

plaintiff's means of support would be within the protection
of the statutes, and the greatest and most permanent injury
of all would be without remedy." Black on Intoxicating
Liquors, section 310, citing our case of *Pegram* v. *Stortz* and
Ohio and Massachusetts cases as holding that action does not
lie to the kin of the dead man after his death, says: "It has
been held that, in an action under the civil damage laws, no
damage can be awarded to the plaintiff for injury to her
means of support by reason of the *death* of her husband
caused by his intoxication, the consequence of the defendant's
furnishing him with liquor. But this doctrine, though sup-
ported by the decisions of several eminent courts, cannot be
regarded as in accordance either with the weight of authority
or the best legal reasoning. The statute gives an action for
injury to the plaintiff's means of support. The husband's
capacity to labor and to earn a living is the means to which
the wife is legally entitled to look for her support. Death
deprives him of this capacity. If, then, his death was a con-
sequence of his intoxication, it seems too plain for argument
that the person who caused the intoxication has inflicted an
injury upon the wife's means of support. And if this is
true, it cannot be denied that she is entitled to recover dam-
ages, not indeed for the death, but for the consequent injury
to her means of support. And the majority of the decisions
are to the effect that if these elements are present,—the fur-
nishing of liquor by the defendant, the intoxication of the
husband, and the latter's death in consequence of such intox-
ication,—the widow may maintain an action for injury to her
means of support and recover damages therefor. As observed
by the court in New York: 'If the injury which had result-
ed to the deceased in consequence of his intoxication had dis-
abled him for life, or to such extent as to incapacitate him
for labor and for earning a support for his family, it would no
doubt be embraced within the meaning and intent of the stat-
ute. That death ensued in consequence thereof, furnishes much
stronger ground for a claim for a loss of means of support;
and a different rule in the latter case would make provision
for the lesser and temporary injury, while that which was
greater and most serious would be without any remedy or
means of redress. Such could not have been the intention of
the law-makers, and the statute was designed to embrace and

most manifestly cover and include all injuries produced by the intoxication, and which legitimately result from the same. If it is an injury which can be repaired by damages, as that arising from a temporary disability, or one where death comes as a natural and legitimate consequence of the intoxication, a case is made out within the statute which entitles the injured party to recover such damages.'" The great preponderance of authority holds that this action under this statute is for harm resulting to the kin, that is, loss of support, and that action lies after such death as well as before.

JUDGE GREEN says in *Pegram* v. *Stortz* that our statute was borrowed from New York. It is almost identical in language with the New York statute. Before we adopted that statute it had received construction in that state by its court of appeals in *Mead* v. *Stratton*, 87 N. Y. 493, cited by JUDGE GREEN in *Pegram* v. *Stortz*, 31 W. Va. p. 324, holding that a widow could maintain the action. The court said "The statute provides for a recovery by action for injuries to person or property or means of support, without any restriction whatever, both direct and consequential injuries included, and it was evidently intended to create a cause of action unknown to the common law, and a new ground and right of action. The injury to the means of support was one of the main grounds of action, and when the party is deprived of the usual means of maintenance, which he or she was accustomed to enjoy previously, by or in consequence of the intoxication or the acts of the person intoxicated, the action can be maintained. It is evident that the Legislature intended to go, in such a case, far beyond anything known to the common law, and to provide a remedy for injuries occasioned by one who was instrumental in producing, or who caused such intoxication. * * * * If the injury which had resulted to the deceased in consequence of his intoxication had disabled him for life, or to such an extent as to incapacitate him for labor and for earning a support for his family, it would no doubt be embraced within the meaning and intent of the statute. That death ensued in consequence thereof, furnishes much stronger ground for a claim for a loss of means of support; and a different rule in the latter case would make provision for the lesser and temporary injury, while that which was greatest and most serious would be without any remedy

or means of redress. Such could not have been the intention of the law-makers, and the statute was designed to embrace and most manifestly cover and include all injuries produced by the intoxication, and, which legitimately result from the same. If it is an injury which can be repaired by damages, as that arising from a temporary disability, or one where death comes as a natural and legitimate consequence of the intoxication, a case is made out within the statute which entitles the injured party to recover such damages." All this goes to confirm my assertion that this action is newly born of the statute, created by it, for *loss of support*, and has nothing in the world to do with the idea of an action in the living man, which upon his death died with him by the old common law. In fact, most of the cases take it for granted, as an indisputable proposition, that this action lies after the death of the party. These cases will be found cited in 23 Cyc. 313, and 6 Am. & Eng. Ency. Law (2d ed.) 54, and by Judge Green in *Pegram* v. *Stortz*. As stated above the New York court, before West Virginia enacted this statute, had construed it to give a widow right of action; but in *Pegram* v. *Stortz* that fact is ignored, and the fixed rule of construction departed from, that when one state enacts a statute of another state it also adopts the construction which had already been given the statute in that state. *Clarke* v. *Figgins*, 27 W. Va. 664. If it could be said that under our Code, chapter 113, section 5, giving an action whenever the death of a person shall be caused by a wrongful act, a widow losing her support from the death of her husband caused by intoxicating liquor unlawfully sold, could sue, a question might be raised whether there could be action under the statute relied upon in this case to support the action, Code, chapter 32, section 20, because it would not be supposed that there would be two actions. But the actions under the two statutes are different. Each is to have force. Each gives an action. Under the one statute the action is given the administrator for the benefit of all distributees; under the other it is given, not to the administrator, but to each and "every husband, wife, child, parent, guardian, employer or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication" etc. The actions are given to

different persons. Moreover, the action under one statute is where death is caused by any "wrongful act, neglect or default," not limiting it to injury from liquor selling. The other statute gives action only for damage caused by liquor selling. The actions are different. In *Roose* v. *Perkins*, 9 Neb. 304, 31 Amer. R. 409, the court says: "The action being for loss of means of support, it will lie in any case where the loss is merely temporary, as by disability, or permanent, as by death." Where one is wounded by another, the former has in life, by common law, right of action, but it dies with him. Under Lord Campbell's act, our Code, chapter 103, section 5, after death an action lies. We cannot strictly say that this act causes the old right of action resident in the murdered man before his death to survive the grave; still virtually so, because the right of of action goes to his personal representative to demand money compensation. That is one action; but the action for liquor selling never resided in the dead man while living; he never had any such action, as it is a new action given only to his kin mentioned in the statute. The court said in *Hackett* v. *Smelsley*, 77 Ill. 121: "This instruction is attempted to be supported upon two grounds: 1st. That it could not have been in the contemplation of the legislature to give this action in a case where death had resulted, because there was a remedy already provided by the previous statute of 1853 for the case where death was caused by a wrongful act of another; and that statute gave the action in the name of the personal representatives of the deceased person, the recovery to be for the benefit of the widow and next of kin. But that statute gives an action only where the wrongful act causing the death is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof. In this case, had not death ensued, Smelsley, the deceased husband, could not have maintained an action against defendants for selling him the liquor which, as alleged, produced the intoxication whereby he came to his death. 2nd. It is said the statute gives the action to the *wife*, and not to the *widow*, and so contemplated the case where death had not resulted, and the husband was still living.

This is a construction too strict, and we do not see why, even in all literal strictness insisted upon, the present case is not

embraced. The statute says, every wife, etc., who shall be injured in means of support, etc., shall have a right of action, etc. The plaintiff was a *wife* at the time the act of injury and its alleged cause occurred. The statute does not require that she should be a wife at the *time* of the beginning of the action." As Judge Green says, I do not think the Lord Campbell act was intended to give a widow action for support after her husband's death from wrongful act; but I do think that the other act is broad and remedial and ought to be liberally construed in this respect, so as to cover the damage wrought by the wrongful act, whether it ensues in failure of support before or after the husband's death. Under *Pegram* v. *Stortz* no action lies in behalf of anybody, widow or child, after the death of the husband or father. I cannot limit the statute remedy in that way.

It was contended in the argument that the fact that the statute was re-enacted in the same substance in 1904 and 1905, shows that the Legislature must have intended to adopt, beyond recall by this Court, the construction given it in *Pegram* v. *Stortz*, and that this Court cannot overrule it, no matter how erroneous this Court might regard it. Now, I can see that that fact is persuasive as a rule of construction of the statute, a reason for holding to *Pegram* v. *Stortz;* but it is not absolutely binding. To give it that effect would be to give the decision in *Pegram* v. *Stortz* the force of a Legislative act, just as much as if the Legislature had passed an act reading, "Be it enacted by the Legislature of West Virginia, That, as held in *Pegram* v. *Stortz*, 31 W. Va. 220, a widow shall not have action for the death of her husband caused by intoxicating liquor sold him." Legislation cannot be made in this implied manner in the face of the constitution, which demands that it be done by act, having title and express enactment, and an enacting clause. That would give the Legislature judicial power. Construction of statutes belongs to the judiciary. I would overrule *Pegram* v. *Stortz* if the Court were unanimous, but not otherwise. There has been but one case giving such construction to the statute, and, as I understand *Clark* v. *Figgins*, 27 W. Va. 663, courts are more inclined to overrule one erroneous case than several.

Judge McWhorter concurs in Judge Brannon's note.