378 S.E.2d 840

**MICHAEL R.**

v.

**SANDRA E.**

No. 18691.

Supreme Court of Appeals of
West Virginia.

March 13, 1989.

R. Sue Core, Elkins, for appellant.

PER CURIAM:

This is an appeal from a final order of the Circuit Court of Monongalia County, dated November 24, 1987, which granted the parties joint custody of their ten-year-old daughter. The child's father, Michael R.,[1] contends that the lower court erred in not granting him sole custody. We agree, and we remand the case for entry of a proper order.

The parties to this action, Michael R. and Sandra E., were never married, but lived together off and on for a number of years. The relationship produced one child, a daughter, who was born in April, 1977. Sandra was the child's primary custodian.

On December 20, 1984, Michael instituted proceedings in the Circuit Court of Monongalia County to establish his visitation rights. By order dated April 24, 1985, the court set a reasonable visitation schedule and ordered Michael to pay child support. Thereafter, a dispute arose as to custody and visitation privileges, and the parties petitioned the court to enforce their respective rights under the order. The parties subsequently reached an agreement, reflected in an order dated September 13, 1985, to share custody of their daughter.[2] The child continued to live primarily with her mother.

On January 8, 1987, Sandra voluntarily relinquished physical custody of the child to Michael and submitted to hospitalization for treatment of alcoholism. On January 26, 1987, Michael instituted proceedings in the circuit court to modify the custody decree. The petition alleged that since the entry of the joint custody decree, Sandra's ability to care for and supervise the child had deteriorated, and that she was no long-er mentally or emotionally fit to have custody as a result of alcohol and drug abuse. The petition further alleged that Sandra's live-in boyfriend was a substance abuser who had precipitated several violent altercations in her home, including a recent episode in which gunshots were fired. The petition alleged that the child, then nine years old, was mature enough to express a preference for her custodian and requested that Michael be granted sole custody and relieved of the court-ordered obligation to pay child support.

The matter was referred to a family law master. After a hearing on February 6, 1987, at which Sandra made no appearance due to her continued hospitalization, the master found that Sandra's recent "bizarre" behavior had placed the child's safety and welfare at risk and granted temporary custody to Michael. The master also ordered the child advocate [3] to investigate the case and continued the hearing until Sandra could participate in the proceedings.

Further hearings were conducted on June 5, 1987, and August 21, 1987, at which Sandra appeared in person and by counsel. Based on the testimony adduced at these hearings and on the child advocate's report, the master found that there had been a significant change of circumstances since the entry of the joint custody order and that the best interests of the child were served by granting Michael sole custody. The master recommended liberal visitation privileges for Sandra.

The circuit court approved and adopted most of the master's findings of fact, but disapproved his recommendation of granting sole custody to Michael. The court found that Sandra had been the child's undisputed guardian until 1985, that Mi-

---

1. We follow our past practice in domestic relations and juvenile cases which involve sensitive facts and do not utilize the last names of the parties. *See, e.g., Nancy Viola R. v. Randolph W.,* 177 W.Va. 710, 356 S.E.2d 464 (1987); *West Virginia Dept. of Human Services v. La Rea Ann C.L.,* 175 W.Va. 330, 332 S.E.2d 632 (1985).

2. The order also specified the visitation rights of the noncustodial parent and continued Michael's obligation to pay child support. The visitation and child support provisions were subsequently modified by orders entered January 24, 1986, and February 3, 1986, which are not relevant here.

3. The child advocate office is a subdivision of the West Virginia Department of Human Services and is responsible for promoting and protecting the best interests of children in family law matters. *See* W.Va.Code, 48A–2–1, *et seq.;* W.Va.Code, 48A–3–1, *et seq.*

chael had not challenged her custodial rights until she sought court-ordered child support, and that while in Michael's temporary custody, the child's primary caretaker had been Michael's mother. The court further found that although Sandra had had problems in the past, her health and living situation appeared to have stabilized. In its final order dated November 24, 1987, the circuit court granted the parties joint custody of their daughter and stipulated that the child would continue to live with her father until the end of the school year, at which time the primary custody would shift to Sandra. It is from this order that Michael brings this appeal.

■ As an initial matter, we note that the circuit court clearly erred in granting the parties joint custody of their daughter. We stated in Syllabus Point 4 of *Lowe v. Lowe*, 179 W.Va. 536, 370 S.E.2d 731 (1988):

> "A cardinal criterion for an award of joint custody is the agreement of the parties and their mutual ability to co-operate in reaching shared decisions in matters affecting the child's welfare."

We have repeatedly held that joint custody is inappropriate when each parent seeks exclusive custody or either parent contests the other's petition for custody. *See Lowe v. Lowe, supra; M.S.P. v. P.E.P.*, 178 W.Va. 183, 358 S.E.2d 442 (1987); *Rose v. Rose*, 176 W.Va. 18, 340 S.E.2d 176 (1985); *Wagoner v. Wagoner*, 172 W.Va. 687, 310 S.E.2d 204 (1983). Since Michael was seeking exclusive custody of his daughter in the proceedings below and Sandra opposed his petition, an award of joint custody was not appropriate here.

■ The principal question on appeal, however, is whether the circuit court erred in not adopting the master's recommendation that Michael be granted exclusive custody of his daughter. Our standard of review was stated in Syllabus Point 3 of *Fanti v. Welsh*, 152 W.Va. 233, 161 S.E.2d 501 (1968):

> " 'Where questions of fact are referred to and passed upon by a commissioner, and the findings of the commissioner are overruled and disaffirmed by the circuit court, the appellate court must determine for itself, from the facts and circumstances disclosed by the record, whether it will sustain the conclusion of the commissioner or that of the circuit court.' Point 1, Syllabus, *Hyre v. Lambert*, 45 W.Va. 715 [31 S.E. 927 (1898) ]."

■ The proceedings below involved a proposed modification of the circuit court's custody decree. In Syllabus Point 2 of *Cloud v. Cloud*, 161 W.Va. 45, 239 S.E.2d 669 (1977), we stated:

> "To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child."

■ There is no question that the circumstances of these parties changed after the entry of the joint custody order in September, 1985. In January, 1987, Sandra relinquished physical custody of her daughter and entered a drug and alcohol treatment program requiring hospitalization. There is evidence that in the preceding months, her behavior had been erratic. Sandra had also acquired a live-in boyfriend, whose presence in her home presented a potential danger to the safety of the child. These facts clearly warrant a finding of a change of circumstances.

■ The key question is whether a change in custody would materially promote the welfare of the child. In this regard, the evidence appears more or less equally balanced. On the one hand, the record shows that Sandra completed her rehabilitation program, had pursued follow-up care after her discharge from the hospital and, at the time of the final hearing, had not had a drink for over eight months. We have recognized that such efforts at reform are to be taken into consideration in making an award of custody. *See Allen v. Allen*, 173 W.Va. 140, 320 S.E.2d 112 (1984). Moreover, the uncontradicted evidence shows that the child, who was primarily in Sandra's care for the first eight years of her life, is bright, well-adjusted, and fond of her mother.

There is also evidence, however, that Sandra used illicit drugs following her release from the treatment program and had resumed contact with her live-in boyfriend. Moreover, the child herself expressed a preference for living with her father. The record reflects that her choice was intelligently and voluntarily made and was, therefore, entitled to consideration. *See Rose v. Rose, supra; Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981).

In view of Sandra's history of erratic behavior and the child's stated preference for living with her father, we must conclude that the weight of the evidence at the final hearing supported the conclusion that an award of exclusive custody to Michael would have materially promoted the welfare of the child. Accordingly, we reverse the decision of the circuit court and remand the case for entry of a proper custody order. We also conclude, however, that Sandra is entitled to liberal visitation rights. On remand, the order of the court should reflect the same.

Accordingly, the judgment of the Circuit Court of Monongalia County is reversed, and the case is remanded to that court for entry of a proper order in accordance with the principles enumerated in this opinion.

Reversed and Remanded with Directions.