Ermina L. ROBERTS, f/k/a Ermina L. Isbell, Appellant (Respondent),

v.

Frank Thomas VILOS, Appellee (Petitioner).

No. 88–301.

Supreme Court of Wyoming.

June 22, 1989.

John P. Worrall of Davis, Donnell, Worrall & Bancroft, P.C., Worland, for appellant.

G. Albert Sinn, Worland, for appellee.

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and BROWN, Ret. J.

BROWN, Justice, Retired.

The district court denied appellant's petition for modification of a custody decree regarding primary custody of two of the parties' minor children. Appellant appeals and states the issue to be:

> Did the trial court abuse its discretion and thus err as a matter of law by failing to consider the best interests of the children and by considering instead only the circumstances of the mother in a child custody modification proceeding?

We affirm.

On March 2, 1979, the parties were divorced and appellant (mother) was awarded the primary care, custody and control of the parties' children, with appellee (father) being awarded rights of visitation.[1] At the request of appellant in June 1985, the children went to reside with appellee. On April 24, 1986, appellee filed a Petition for Modification of Divorce Decree seeking primary custody of the parties' children. After a hearing the court found a substantial change in the circumstances and modified the divorce decree to give appellee primary custody of the two youngest children, FV and BV. The order was dated March 4, 1987.

At the beginning of the summer of 1987, FV and BV went to Washington to visit appellant. At the end of the summer, appellant refused to return the children to appellee in Wyoming. Appellee and appellant both agreed to enroll the children in school in Washington. In January 1988, appellee informed appellant that he was coming to Washington to get the children at the end of the school semester. Before appellee left for Washington, he was served with a temporary restraining order from a Washington court preventing him from going to Washington to take the children. Appellee contested the Washington

---

1. There were four children born of the parties' marriage. Only the two youngest children are involved here. The eldest is emancipated. The next eldest resides with her mother.

court action. The trial court in Wyoming and the Washington court agreed that neither state would make any determinations in this case during the school year. In August of 1988, the children were returned to appellee's custody in Wyoming.

Appellee resides in Worland, Wyoming with his father and the two children. Other relatives of appellee in the Worland area include a brother and his family and a sister and her family. Appellee's sister, an older woman, has taken a special interest in FV and is someone with whom the child feels she can talk. Appellee has been employed for five years at Imperial Holly Sugar Corporation in Worland with the possibility of advancement. The children attend school in Worland, are involved in sports and have friends who are involved in many activities with them. The guardian ad litem stated that the children could survive very well with either parent. Appellant does not contend that appellee provides a bad home for the children.

Certain basic rules of appellate review are applicable here. The reviewing court examines the evidence in the light most favorable to the prevailing party, presumes it is true, and leaves out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the successful party's evidence. Furthermore, the reviewing court may make every favorable inference that may reasonably and fairly be drawn from the evidence produced by the successful party. We will not interfere with the decision of the district court and accord its factual determinations great deference unless there is a procedural error or a clear abuse of discretion. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. A reviewing court cannot substitute its judgment for that of the trial court, whose judgment must be sustained unless clearly erroneous, manifestly wrong, or totally against the evidence. The appellate court will not set aside the trial court's findings merely because it might have reached a different result. See *Pancratz Company, Inc. v. Kloefkorn–Ballard Construction/Development,* 720 P.2d 906 (Wyo. 1986); *Wangler v. Federer,* 714 P.2d 1209 (Wyo.1986); *Yates v. Yates,* 702 P.2d 1252 (Wyo.1985); *Lebsack v. Town of Torrington,* 698 P.2d 1141 (Wyo.1985); *Scott v. Fagan,* 684 P.2d 805 (Wyo.1984); *State ex rel. Wyoming Worker's Compensation Division v. Colvin,* 681 P.2d 269 (Wyo.1984); *Consolidated Freightways v. Drake,* 678 P.2d 874 (Wyo.1984); *Doenz v. Garber,* 665 P.2d 932 (Wyo.1983); *Ayling v. Ayling,* 661 P.2d 1054 (Wyo.1983); *City of Rock Springs v. Police Protection Association,* 610 P.2d 975 (Wyo.1980); *Arch Sellery, Inc. v. Simpson,* 360 P.2d 911 (Wyo.1961).

In *Kreuter v. Kreuter,* 728 P.2d 1129, 1130 (Wyo.1986) (footnote omitted), we said:

Section 20–2–113(a), W.S.1977, Cum. Supp.1986, provides for modification of provisions for custody and support in divorce decrees but the "circumstances" there referred to must be a substantial or material change of circumstances which outweigh society's interest in applying the doctrine of res judicata to a final decree of divorce. There must be an end to litigation at some point, or the legal system would become bogged down so that nothing would ever remain decided. *Mentock v. Mentock,* Wyo., 638 P.2d 156 (1981). The burden of proof lies with the party seeking the modification that a substantial or material change has occurred subsequent to the decree. *Nuspl v. Nuspl,* Wyo., 717 P.2d 341 (1986); *Cubin v. Cubin,* Wyo., 685 P.2d 680, 684 (1984).

Decisions regarding child support and custody rest largely with the district court which we will not disturb in the absence of a grave abuse of discretion or violation of some legal principle. *Nuspl v. Nuspl,* supra; *Harrington v. Harrington,* Wyo., 660 P.2d 356, 360 (1983).

The only changes that occurred between the court's March 1987 order and the October 3, 1988, hearing, other than the fact that the children are older, are that appellant has remarried, her income has in-

creased, and she can obtain and has obtained insurance for the children. The trial court did not abuse its discretion in finding that appellant failed to show a substantial change in circumstances.

The main thrust of appellant's appeal is that the court did not consider the best interests of the children and did not honor the children's preference regarding custody. The trial court's decision letter dated October 7, 1988, which is incorporated into its order of October 18, 1988, sets out W.S. 20-2-113(a) which provides in pertinent part:

> [T]he court may make such disposition of the children as appears most expedient and beneficial for the well-being of the children. * * * On the petition of either of the parents, the court may revise the decree concerning the care, custody, visitation and maintenance of the children as the circumstances of the parents and the benefit of the children requires.

It is undisputed that the trial court must always consider the best interests of the children in custody matters. *Fanning v. Fanning,* 717 P.2d 346 (Wyo.1986); *Mentock v. Mentock,* 638 P.2d 156 (Wyo.1981); *Wilson v. Wilson,* 473 P.2d 595 (Wyo.1970); *Taylor v. Taylor,* 388 P.2d 192 (Wyo.1964); *Henson v. Henson,* 384 P.2d 721 (Wyo. 1963). It is obvious here that the trial court was aware of, and did consider, the best interests of the children. This is demonstrated by the court's recital of the controlling statute in his decision letter.

The trial court applied the correct law; there was no procedural error nor any clear abuse of discretion. Basing its decision on the evidence before it, the court did not act in a manner which exceeded the bounds of reason under the circumstances, and the conclusion it reached was arrived at reasonably. Therefore, the trial court did not err in denying appellant's petition.

Appellant contends that the custody award was made contrary to the preference of the children. In *Yates,* 702 P.2d at 1256 (citation omitted), this court said:

> The preference of a child of sufficient age and maturity is a factor to be considered by a court in ascertaining what is in the child's best interests. In *Tytler v. Tytler,* 15 Wyo. 319, 338, 89 P. 1, 6 (1907), the court stated:
>
> "* * * Such we think is the general rule; for, if the happiness and welfare of the infant is to be consulted, nothing could be more potent upon that question than the expression of its preference based upon kindness or unkindness, care or want of care, love and affection or want thereof, and, as to the surrounding conditions, either with one or the other."
>
> "It appears to be the almost universal rule that at least when a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment as to its future welfare, based upon facts and not mere whims, its wishes are one factor which may be considered by the court in determining custody, in doubtful cases in any event, usually not because of any legal right in the child to have its wishes granted, but because the consideration of such wishes will aid the court in making a custodial decree which is for the best interests and welfare of the child. * * * " 4 A.L.R.3d 1396, 1402 Custody–Child's Wishes (1965).
>
> Courts in other jurisdictions have taken into consideration the wishes of children when determining custody. *duPont v. duPont,* 59 Del. 206, 216 A.2d 674 (1966); *State ex rel. Waslie v. Waslie,* 274 Minn. 564, 143 N.W.2d 634 (1966); *In re Marriage of Kramer,* 177 Mont. 61, 580 P.2d 439 (1978). In *Kramer* the court held:
>
> "We are committed to the view that the welfare of the children is the paramount consideration in awarding custody. [Citations.] We believe the welfare of the children, particularly children of the ages involved here [the ages of the children involved were 11, 13, and 15] is not being served if their wishes are not considered by the trial court." Id., at 444.
>
> * * * In addition, the preference which has a stated basis and is expressed in a plain manner should be accorded greater

weight than one whose basis cannot be described. This is not to say that the preference of a minor child is controlling upon the court.

In determining the weight to be given a child's preference several factors should be considered: the age of the child; the reason for the preference; the relative fitness of the preferred and non-preferred parent; the hostility, if any, of the child to the non-preferred parent; the preference of other siblings; and whether the child's preference has been tainted or influenced by one parent against the other.

Although custodial preference is not conclusive, the court here was entitled to give more consideration to a fifteen-year old girl's preference than say, the preference of a six-year old child. * * *

* * * We accord great deference to a trial judge's factual determination. The judge hearing a modification petition is in a better position to determine the credibility of a witness and the value of the testimony. *Stirrett v. Stirrett*, 35 Wyo. 206, 248 P. 1 (1926).

Bill Shelledy, guardian ad litem, reported to the court in chambers regarding the children's preferences with respect to custody. Mr. Shelledy interviewed the children on or about September 14, 1988, less than a month after they returned from Washington. Mr. Shelledy stated to the court:

I asked, at first I just asked [the children], who would you prefer to live with. Neither one of the children wanted to state, you know, there wasn't anything immediately jumping out, I want to be here, I want to be there. So, I asked them, ok[ay], where would you want to live. They all said Washington. Both of them said Washington. The reasons for Washington, [FV] was the mall and [BV] was his paper route and friends.

*     *     *     *     *     *

I tried to get around to—they said that they wanted to live in Washington. The next question I asked, well, I said, if your dad lived in Washington and your mom lived in Worland, where would you want to live? And then they changed it around. They wanted to live in Worland. Basically, when it got around to—the way they answered the questions, though, they would not come out and say specifically, I want to live with my mother rather than my father. There were— the answers to the questions turn to the fact that I had the feeling that they wanted to live with their mother.

I asked questions about what they like, what they dislike of each. After being sitting here in Court, I find it very interesting because there was more conversation about their mother, likes and dislikes, just as she was in court more talkative than Frank. They couldn't think of any dislikes or likes immediately about Frank, in fact had very little discussion about Frank. They were more discussing their mother and a different relationship. But it appears to me that it's the same type of thing that it appeared to me, that Frank is very inward and quiet and Ermina is more of an outgoing person, and that's the way the kids discussed it.

My end feeling was that the children could survive and survive very well from dealing with them in either place. The kids to me seem extremely well adjusted, and, of course, they had been through this procedure before. But they haven't been disrupted by moving back and forth, and they said, you know, I've got friends in Washington, I've got friends in Worland, I can, you know, in fact can and do move back quite a bit and did not seem to be upset about moving back and forth.

I guess the bottom line is if the Court would ask, or the kids would ask I think if I could get them to come out and specifically say, they would prefer to live with their mother.

If the children had actually been in court, the court would have been able to witness their demeanor and ask more searching or specific questions. With the benefit of seeing and hearing the children, the court might have been able to give their testimony greater weight and better evaluate such

testimony. The children's stated custodial preference is rather tenuous and equivocal.[2] This is understandable because likely the children did not want to offend either parent. Also, some of their reasons for favoring their mother's custody were insubstantial. We cannot say that the court abused its discretion in declining to change custody.

Were we to reverse the trial court, we would necessarily have to weigh and evaluate the evidence differently than did that court. We also would be substituting our judgment for that of the trial court. This is contrary to our appellate rules.

Affirmed.

URBIGKIT, J., filed a dissenting opinion.

URBIGKIT, Justice, dissenting.

Contested custody decisions for children, as a search for their best interest, cannot be extricated from a computer program nor elicited like a mechanical exercise by weight in application of factors, facilities and protection of parental ego. At the same time, decisions must be made when parents choose to live apart, which is more than conventional in this country today. It is in analysis of the probabilities of all intangibles attendant to raising children that sound discretion and judicial decision are addressed. It never can be easy and, assuredly, cannot be expected to be certain.

I first disagree with the trial court decision from a different perspective of the record in some material regard for exercised discretion and not reweighing the evidence which bears upon the likelihood of the father's parental success, both financial and historical.[1] *Cf. Connors v. Connors,* 769 P.2d 336 (Wyo.1989). More directly, I dissent in contending for a higher character of decisional use of the effect of the children's choice for custody. Two reasons are advanced why heightened consideration should be given to the parental choice by the children after their attainment of the reasoning age for knowing, believing and choosing of a statutory fourteen years of age.

In first regard is the established knowledge that a court order cannot successfully and satisfactorily surmount the custody desires of teenage children for any extended time. Court orders today simply cannot hold these young people "down at the farm" if that is not where they want to be with the other parent.

In a major research analysis found in a recent review, Professor Cloud demonstrates, to my satisfaction, that there cannot be a successful control of cocaine usage unless we reduce the number of addicts.[2] He demonstrates with detail and logic that nothing else, including death penalty and otherwise, will work until or unless product marketability is reduced by sheer reduction in the number of addicts as a matter of participative choice as members of that class. Likewise, and equally to be justified by experience and logic, is the thesis that self decision is also required of

2. W.S. 3-2-107 pertains to preference for appointment of *guardian* of a minor. Understandably, this statute was not urged by appellant at trial nor on appeal.

1. The parties were divorced in 1979 by stipulated settlement of child custody, support obligation and debt allocation. Custody of the four children went to the mother, present appellant. During the next eight years, the pervasive problems of non-support payment, mutually agreed changes of custody and unpaid indemnity responsibility occurred and re-occurred. The oldest daughter, T.V., last living with her father, became pregnant in Worland and went to Florida. The second oldest daughter, D.V., remained with her mother who presently has custody. And, the youngest two children, F.V., now fourteen, and B.V. age thirteen, remain the

subject of the 1987–1988 custody controversy. At appeal date, the father, employed at Imperial Holly Sugar Corporation, was subject to a $9,500 continuing garnishment in favor of the mother, as well as a previous debt for unpaid child support included in a URESA action in the amount of approximately $2,700. The mother, now remarried a second time, lives in Olympia, Washington and the father lives with his retired father in Worland, Wyoming, where these proceedings have occurred. Evidence in the record reveals that these two children want to live with their second oldest sister and mother in Olympia, Washington.

2. Cloud, *Cocaine: Demand and Addiction, A Study in the Possible Convergence of Rational Theory and National Policy,* 42 Vand.L.Rev. 725 (1989).

young people involved to make custody arrangements workable. The supposition that individualized decision is required to cure one national problem of substance addiction may afford logic even if a broad comparison to the self-determinant criteria required to resolve' another major national concern addressing the best interest of young people who are the product of broken homes. *See Michael R. v. Sandra E.*, 378 S.E.2d 840, 843 (W.Va.1989).

My second application of the efficiency of teenager choice has a historical precedent which seems to have fallen into disregard in current time and clearly in this case was neither argued in trial court nor briefed on appeal. In 1890 Wyo. Sess. Laws ch. 21, § 2, the Wyoming legislature provided that "[i]f the minor is under the age of fourteen years, the court or judge may nominate and appoint his guardian. If he is fourteen years of age he may nominate his own guardian who, if approved by the court or judge, must be appointed accordingly." That statutory provision continues essentially unchanged as presently found in W.S. 3-2-107:

(a) The order of preference for the appointment of a guardian of a minor is as follows providing the persons are qualified and suitable:

\* \* \* \* \* \*

(iii) The person requested by a minor who is fourteen (14) years of age or over.

In *Tytler v. Tytler*, 15 Wyo. 319, 338–39, 89 P. 1 (1907), as extensively quoted by the majority in this case, this predecessor statute was expressly applied to a custody decision:

In the case before us the children are with their mother. At the time of hearing, Muriel, who was just approaching the age of fourteen, expressed her wish to remain and live with her mother. She has now reached the age of fourteen, and her wish at this time as to who shall be her guardian is expressly recognized by statute. She may nominate her own guardian, "who, if approved by the court or judge, must be appointed accordingly." (Sec. 4867, R.S.) While the supervisory power of the court or judge goes to the fitness and suitability of the person so nominated, the statute assumes that the minor having reached the age of fourteen can act intelligently in the matter of selecting her guardian.

Recognition of the guardianship designation statute for custody purposes was followed in *Gill v. Gill*, 363 P.2d 86, 89 (Wyo. 1961), which stated:

In determining whether a change in custody should be ordered by this court at this time, consideration may be given to the fact that the older boy will be fourteen years of age in another six months, and the younger boy will be fourteen years of age in another eighteen months, at which age minors become entitled to nominate their own guardians, subject to the approval of the court or judge. Section 3–5, W.S.1957. [Now restated as W.S. 3-2-107]

Unless we determine this case on a compulsive analysis of res judicata, I would find a best interest discretionary decision should more expressly account for the age of the children and their right of choice when old enough to reasonably decide as set by the general statute at age fourteen for guardianship. Although consideration of the effect of a child's choice under the statutory and case precedent was not included in present briefing, I remain concerned with further omission of any consideration in this majority's decision. Silence should not imply disavowal of the individual choice perspective which was developed by statutory application in *Tytler* and *Gill* for long standing precedent.

Consequently, I dissent from the order of custody entered.