2015 WY 76

**Eric Robert DAHLKE, Appellant (Plaintiff),**

v.

**Heather Jo DAHLKE, Appellee (Defendant).**

No. S–14–0201.

Supreme Court of Wyoming.

May 27, 2015.

Representing Appellant: Greg L. Goddard of Goddard, Wages & Vogel, Buffalo, Wyoming.

Representing Appellee: Dwight F. Hurich of Hurich Law Office and Lisa K. Finkey, Gillette, Wyoming.

Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.

FOX, Justice.

[¶ 1]   After their divorce in 2010, the parties shared custody of their minor children, AD and ED, with each parent acting as primary custodian for approximately one-half of each month.  Father, Eric Robert Dahlke, petitioned for custody modification alleging a material change in circumstances and requesting that the district court grant him primary custody of the minor children. Mother counterclaimed and requested that she be awarded primary custody.  The district court found a material change in circumstances had occurred since entry of the original custody order, and that it was in the children's best interests for Mother to be granted primary custody with liberal visitation awarded to Father.  Father appeals and we affirm.

### ISSUES

[¶ 2]   1.   Was there a material change in circumstances warranting the district court's reopening of the existing custody order?

2.   Did the district court abuse its discretion in finding that it was in the best interests of the children for Mother to have primary custody?

### FACTS

[¶ 3]   The parties divorced on November 9, 2010.  They had two minor children: AD,

born in 1998, and ED, born in 2004. The parties stipulated to a shared custody arrangement, giving each parent primary custody for approximately one-half of each month.[1] Father petitioned to modify custody in September 2013.

[¶ 4] Father owns a three-bedroom home in Gillette where he lives with his current wife, Jodi Hoffman; their daughter; four children from Ms. Hoffman's previous marriage; and AD and ED, during Father's custody periods. When AD and ED are at Father's home, there are seven children in the house, and AD and ED share a bedroom with their two step-brothers. While the children generally seem to get along, AD and ED both reported some continuing conflict with one of their step-brothers.[2] AD also testified that he finds his Father's house "stressful" because of the number of people residing there. While AD appreciates that there is always someone to "hang out with," the lack of privacy clearly caused difficulty for AD.

[¶ 5] Father is currently employed at Thunder Basin Coal Company, where he has worked since 1999. The coal mine is approximately thirty-eight miles from Gillette, and requires that Father work a twelve-hour rotating shift, which includes some nights. Father testified that when he works, he leaves home no later than 5:00 a.m. (or p.m. if he is working nights) and returns home between 8:00 and 8:15 p.m. (or a.m.).

[¶ 6] Mother also owns her own three-bedroom home in Gillette where she resides with her significant other, Wayne Patches; and AD and ED when she has custody. In Mother's home the children each have their own bedroom. AD testified that he likes this arrangement as it provides him with more personal space and privacy. Mother is currently employed at Jack's Truck and Equipment in Gillette, where she works weekdays from 7:00 a.m. to 5:30 p.m.

[¶ 7] In July 2013, Mother was arrested for using her employer's gas card to fuel her personal vehicle. Mother pled guilty to conspiracy to commit larceny by bailee on October 28, 2013, and was sentenced to probation on January 27, 2014. The district court deferred judgment pursuant to Wyo. Stat. Ann. § 7–13–301 (LexisNexis 2013), pending Mother's successful completion of her five-year probation period. AD and ED testified that when they first learned about Mother's arrest, they were scared and worried about the possible consequences, but at the time of trial the children testified that they were not being affected by Mother's arrest and prosecution.

[¶ 8] Father petitioned to modify custody on September 20, 2013, alleging that there had been a "substantial change of circumstances" since entry of the original custody order, chief among them being Mother's arrest. Father requested that the district court grant him primary custody of the children. Mother counterclaimed, also alleging that a material change in circumstances had occurred, in part because of Father's changed living situation, and requested that the district court grant her primary custody. At trial the parties called various witnesses and the district court examined the children in camera. At its conclusion, the district court orally ruled that there had been a material change in circumstances warranting reopening the custody determination. The district court, however, reserved ruling on which party should be awarded primary custody until it issued its written order. The written order awarding primary custody of the children to Mother with liberal visitation periods for Father was filed on June 30, 2014. Father timely appealed.

### STANDARD OF REVIEW

[¶ 9] Decisions affecting child custody rest within the sound discretion of the district court. *CLH v. MMJ (In re*

---

1. Father works a rotating schedule at Thunder Basin Coal Company, giving him approximately fourteen days off every month. The parties agreed that Father would have primary custody of the children when he was not working, and Mother would have primary custody on the remaining days.

2. Father and Ms. Hoffman believe that the conflict between the children has dissipated over time; however, AD and ED testified that, at the time of trial, they continued to have problems with their step-brother.

*TLJ)*, 2006 WY 28, ¶ 6, 129 P.3d 874, 876 (Wyo.2006). We will not disturb the district court's findings "absent procedural error or a clear abuse of discretion." *Id.* (citing *Selvey v. Selvey*, 2004 WY 166, ¶ 15, 102 P.3d 210, 214 (Wyo.2004)). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily and capriciously." *Id.* (quoting *Fergusson v. Fergusson*, 2002 WY 66, ¶ 9, 45 P.3d 641, 644 (Wyo.2002)). Our primary goal in reviewing for an abuse of discretion is determining whether the district court's decision is reasonable. *Id.* (citing *Selvey*, 2004 WY 166, ¶ 15, 102 P.3d at 214).

*Kappen v. Kappen*, 2015 WY 3, ¶ 10, 341 P.3d 377, 381 (Wyo.2015).

### DISCUSSION

### I. Was there a material change in circumstances warranting the district court's reopening of the existing custody order?

[¶ 10] The district court found three factors that constituted a material change in circumstances warranting reopening the existing custody order: 1) difficulty with pick-up and drop-off times during exchanges; 2) Father's change in living situation; and 3) Mother's prosecution and current probationary status. The district court also recognized that both parties had conceded that a material change in circumstances had occurred since entry of the original custody order, which pursuant to *Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo.1995), gave the district court jurisdiction to reopen the initial custody determination.

[¶ 11] On appeal, Father argues that the district court erred when it determined that the difficulty in pick-up and drop-off times and Father's changed living situation constituted material changes. Essentially, Father argues that the only material change in circumstance that occurred was the one that reflected poorly on Mother—her arrest. Even if the district court had determined that the only material change was Mother's

arrest, as Father argues, it still would have had jurisdiction to reopen the initial custody determination and resolve which custody arrangement would be in the best interests of the children. Wyo. Stat. Ann. § 20–2–204(c) (LexisNexis 2013); *CLH v. MMJ (In re TLJ)*, 2006 WY 28, ¶ 8, 129 P.3d 874, 876 (Wyo.2006) (A court acquires jurisdiction to determine whether a modification is in the best interests of the child once it has determined that there has been a material change in circumstances.).

[¶ 12] Moreover, both parties invited the district court to revise the joint custody arrangement. Both parties asserted that there had been a material change in circumstances in their pleadings. At trial, both parties argued that a material change in circumstances had occurred warranting the district court's reopening of the existing custody order. As was the case in *Gurney*, the parties made clear that joint custody was no longer working, and that modification was needed. *Gurney,* 899 P.2d at 55. "Here, considering . . . the parties' invitations to the district court to reopen the custodial issue, . . . common sense dictates the district court should reopen the joint custody order and award custody to one parent or the other. . . . No error can be claimed because th[e] court accepted and, at the parties' behest, acted upon the invitations." *Id.* We therefore find no abuse of discretion in the district court's finding that a material change in circumstances existed.

### II. Did the district court abuse its discretion in finding that it was in the best interests of the children for Mother to have primary custody?

[¶ 13] Father also argues that the district court abused its discretion when it determined it was in the best interests of the children for Mother to have primary custody. Father contends that "The District Court ignored several material factors that deserved significant weight and clearly demonstrated that [Father] could provide a more stable home for their children." Specifically, Father contends that the district court failed to place the proper weight on Mother's arrest and criminal prosecution, and that the district court did not consider the "unstable,

volatile" nature of Mother's live-in boyfriend, Wayne Patches. Father also contends that the district court placed too much weight on AD's stated preference to live with Mother.

[¶ 14] In reviewing custody determinations, we have stated:

"The law affords wide discretion to the district court when fashioning custody and visitation provisions for the best interests of the children." *Pace* [*v. Pace*], [2001 WY 43,] ¶ 11, 22 P.3d [861,] 865 [ (Wyo. 2001) ] (quoting *Reavis* [*v. Reavis*], 955 P.2d [428,] 431 [ (Wyo.1998) ]). Such discretion "encompasses one of the most difficult and demanding tasks assigned to a trial judge." *Reavis*, 955 P.2d at 431. "Ultimately, the 'goal to be achieved is a reasonable balance of the rights and affections of each of the parents with paramount consideration being given to the welfare and needs of the children.'" *Pace*, ¶ 11, 22 P.3d at 865 (quoting *Leitner* [*v. Lonabaugh*], 402 P.2d [713,] 720 [ (Wyo. 1965) ]).

*Zupan v. Zupan*, 2010 WY 59, ¶ 13, 230 P.3d 329, 333 (Wyo.2010). In this case, the district court entered a thorough and well-reasoned opinion, and despite Father's contentions, it is clear that it took into consideration both Mother's arrest and her relationship to Mr. Patches.

[¶ 15] Addressing Mother's arrest and prosecution, the district court found:

To be sure, the arrest had a negative impact on [AD] and [ED]. At the time of the arrest, both children expressed that they "worried" that their Mother would have to go to jail. However, Mother and Father assuaged those concerns by talking to the children and explaining the circumstances. Since that time, both children expressed that they are no longer concerned that Mother will go to jail. Both children denied being teased at school about the incident. In short, the children testified that the pending criminal charges currently are not affecting them.

The district court clearly considered the effect that Mother's arrest had on the children and determined, under a best interests analysis, that they should still be placed in Mother's primary custody. The record supports these findings made by the district court. While the children both testified that they were worried when they learned of Mother's arrest, neither expressed any uneasiness at the time of trial. Father asserts that the children's apprehension was reflected in their falling grades after they learned of Mother's arrest. However, the district court adequately addressed this contention in its order finding that neither child's difficulties in school were the result of Mother's legal troubles. We cannot say that the district court acted unreasonably in weighing Mother's criminal issues while determining which custody arrangement was in the best interests of the children.

[¶ 16] The district court also considered Mother's relationship with Mr. Patches, and the effect of that relationship on the children. The district court found, "Although Mr. Patches has had inappropriate interactions with Father, the testimony establishes his interactions with the children are appropriate. For example, Patches and Mother assisted [ED] at a recent school academic event. Both children explained that Wayne Patches helps them with their homework." The district court went on to conclude:

Mr. Patches and Ms. Hoffman appropriately interact with the children, help them with schoolwork, and generally care for the children. *See* Wyo. Stat. Ann. § 20–2–201(a)(ii). [AD] and [ED] appear to have proper relationships with the other adults each parent has brought into their lives, although [AD] expressed a closer relationship with Mr. Patches than with Ms. Hoffman mainly because Mr. Patches has more time to spend with [AD] than Ms. Hoffman does due to the other children in Father/Ms. Hoffman's home.

There was no testimony that Mr. Patches ever acted inappropriately with the children, and both AD and ED expressed having a good relationship with him. Father's primary concern with Mr. Patches lies in the fact that he was also charged with, and pled guilty to, conspiracy to commit larceny by bailee for the same conduct that resulted in Mother being criminally charged and prosecuted. Like Mother, Mr. Patches received a deferral pursuant to Wyo. Stat. Ann. § 7–13–

301, and is currently serving probation. While the district court did not make express findings concerning Mr. Patches' criminal record, it did address the criminal incident in reference to Mother, and found that the children were not currently being affected. *See supra* ¶ 15. The district court also specifically found that Mr. Patches acted in an appropriate manner with the children and that the children had a proper relationship with him. A trial court, having heard and witnessed the testimony, is in the best position to weigh the evidence and determine which party should be awarded primary custody. *See Aragon v. Aragon*, 2005 WY 5, ¶ 22, 104 P.3d 756, 762 (Wyo.2005) ("It is the district court's duty to weigh the evidence in making custody determinations."). The district court clearly considered Mr. Patches' involvement in the children's lives when it fashioned its custody determination.

[¶ 17] In addition to the factors set forth in Wyo. Stat. Ann. § 20–2–201(a) (LexisNexis 2013), the district court considered testimony of the children, and AD's preference to reside with Mother in making its custody determination. We have long held that "the preference of a child of sufficient age and maturity is a factor to be considered by a court in ascertaining what is in the child's best interests." *Love v. Love*, 851 P.2d 1283, 1289–90 (Wyo.1993) (quoting *Roberts v. Vilos*, 776 P.2d 216, 218 (Wyo.1989)). We have identified several factors to consider in weighing a child's custodial preference:

> [T]he age of the child; the reason for the preference; the relative fitness of the preferred and non-preferred parent; the hostility, if any, of the child to the non-preferred parent; the preference of other siblings; and whether the child's preference has been tainted or influenced by one parent against the other.

*Roberts*, 776 P.2d at 219. "In addition, the preference which has a stated basis and is expressed in a plain manner should be accorded greater weight than one whose basis cannot be described." *Id.* at 218–19.

[¶ 18] Father argues that the district court relied too heavily on the testimony of AD to fashion the custody arrangement. While it is true that a child's preference is only one factor to consider, and that it cannot form the sole basis for a custody determination, a child's preference should be seriously considered when the child is of an appropriate age and maturity to assert such a preference. *Love*, 851 P.2d at 1291; *Mulkey–Yelverton v. Blevins*, 884 P.2d 41, 44 (Wyo.1994) ("A child's unequivocal preference to live with a particular parent is a factor to be considered, but the expression of a preference is not conclusive.").

> Courts have relied on children's preferences in granting custody where they were found to be "bright, communicative, understanding, and mature for their age," and the decision was "well-reasoned" and "not the product of coaching." *Hansen v. Hansen*, 327 N.W.2d 47, 49 (S.D.1982). We agree that the "welfare of the children * * * is not being served if their wishes are not considered by the trial court." *In re Marriage of Kramer*, 177 Mont. 61, 580 P.2d 439, 444 (1978). *See also, In re Custody of Maycelle D.*, 213 Mont. 225, 691 P.2d 410, 412 (1984). Though the child's preference is but one factor to consider, theses wishes should receive "serious consideration." *In re Marriage of Rolfe*, 216 Mont. 39, 699 P.2d 79, 87 (1985).

*Love*, 851 P.2d at 1290–91. While AD's preference was not stated explicitly, his testimony clearly demonstrated that he preferred the living arrangement he had with Mother, which provided him with more personal space and privacy. This preference was deserving of "serious consideration" by the district court. AD was sixteen at the time he testified and of "average to above-average maturity." He clearly stated the reason for his preference, and it was not the result of any influence by either parent or any animus toward either parent. Instead, AD testified that he preferred the more quiet and private environment that he enjoyed while in his Mother's custody. The district court seriously considered AD's preference and provided it with the weight that it deemed necessary. *See In re Adoption of ADA*, 2006 WY 49, ¶ 18, 132 P.3d 196, 203 (Wyo.2006) ("[I]t [is] within the district court's province to weigh the evidence and judge the credibility of the

witnesses."). We cannot say that the district court abused its discretion in doing so.

[¶ 19] Moreover, the district court's determination that primary custody should be awarded to Mother was clearly based on more than AD's preference. The court made specific findings on a number of the factors set forth in Wyo. Stat. Ann. § 20–2–201(a). It looked to the relationships that the children had with the other adults that the parents had brought into the children's lives as well as Mother's arrest and probation. It also determined that the sudden enlargement of Father's family posed some problems. It conceded that had the children grown up in a large family, this likely would not be an issue, but the children had become accustomed to living with their parents and each other, and the lack of attention and privacy that comes with being part of a large family was difficult for the children. The district court also cited the disagreements between the children and their step-brother, stating, "The court concludes that the best way to ameliorate this tension will be to have less full-time interaction between [AD], [ED] and [their step-brother]." Finally, the district court considered the relationship of the children with their parents, and found that liberal visitation, rather than primary custody, with Father would strengthen the relationship between the children and Father. The district court stated:

> The addition of other children into the home, including a newborn half-sibling ... has left [AD] and [ED] feeling that they do not spend a lot of one-on-one time with Father.... For the first 15 and nine years of their lives, respectively, [AD] and [ED] were the only children in each parent's life. Now, having to share Father's time with five other siblings, [AD] and [ED] feel a little left out when they are at Father's house as compared to Mother's.

> Therefore, the court concludes that the best way to maintain and strengthen [AD] and [ED]'s relationship with their Father is to ensure that the time Father spends with each is focused on [AD] and [ED] rather than dispersed among all seven children at once. This can be facilitated best by having substantial regularly scheduled visitation during the substantial periods when Father is off work.

In short, the district court considered a number of factors in establishing the custody arrangement, and did not "rel[y] entirely on the in camera testimony of [AD]," as Father contends. The district court's decision was thorough and well-reasoned. It did not abuse its discretion in awarding primary custody to Mother.

[¶ 20] The decision of the district court is affirmed.