# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 13

OCTOBER TERM, A.D. 2015

*January 27, 2016*

TASCHE N. DEMERS,

Appellant
(Defendant),

v.

S-15-0167

MICHAEL W. NICKS,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
Guy P. Cleveland of Cleveland Law, Cheyenne, WY.

*Representing Appellee:*
No appearance.

*Representing Guardian ad Litem:*
No appearance.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1]    Tasche DeMers (Mother) challenges a district court order awarding Michael Nicks (Father) primary custody of the parties' ten-year old son.  Mother contends that the district court erred by treating the dispute as an initial custody determination rather than as a modification of an existing custody order.  Mother further contends that the district court abused its discretion by giving insufficient weight to the status quo and the child's preference.  We affirm.

## ISSUES

[¶2]    Mother states the issues on appeal as follows:

> I.    Whether the trial court abused its discretion by ignoring material factors deserving significant weight.  The relevant material factors being:
> a.    Status Quo as a Material Factor; and
> b.    Child's preference as a Material Factor requiring "serious consideration."
>
> II.    Whether the trial court abused its discretion by determining this matter as an "initial custody determination" rather than a modification proceeding after entry of the temporary custody order that solidified the parents' decade long shared custody/equal parenting time agreement.

## FACTS

[¶3]    The parties met in Cheyenne, Wyoming in 2004 and began dating.  In December 2004, Mother gave birth to the parties' son, ADN.  The parties never married, and they separated in September 2005, when ADN was about ten months old.  Mother and Father thereafter lived separately and shared the parenting of ADN. [1]

[¶4]    The parties eventually began new relationships and had additional children. Mother had a relationship with Manuel Maestas, who passed away in 2010, and had two children with him.  Father is married to Brittany Nicks, and they have two children together.

---

[1] With regard to the shared parenting, the parties' testimony conflicted.  Father testified that after the parties separated, he cared for ADN the majority of the time.  In contrast, Mother testified that during that period, ADN spent the majority of his time with her.  The district court found Father's testimony more credible and accepted his version of the parenting arrangement during the period following the parties' separation.

[¶5] In 2009, Mother moved to Denver, Colorado and took ADN with her. Father opposed the move, but at that time he lacked the financial resources to file a court action. Mother lived with her father in Denver for over a year and then returned to Cheyenne. During the time Mother lived in Denver, Father exercised regular visitation and paid child support to Mother.[2]

[¶6] Upon Mother's return to Cheyenne, the parties resumed their shared parenting of ADN, and they shared custody of him on a relatively equal basis. The present dispute began in December 2012 when Mother informed Father that she intended to move back to Colorado and once again take the parties' son with her. On December 11, 2012, Father filed a Petition to Establish Custody and Visitation, and Modify Child Support, and at the same time obtained an ex parte mutual restraining order prohibiting either party from removing ADN from Wyoming during the pendency of the custody petition.[3] Mother responded by sending Father a text message stating:

> I'll be keeping [ADN] from now on, see u in court I guess,
> laters. Britnay will no longer needa pick him up. Do not
> contact me anymore....
> U shoulda talked to me about it like a man, ill be switching
> him schools as well.

[¶7] On February 1, 2013, Father filed a motion requesting that the district court enter an order addressing temporary custody, visitation, and child support during the pendency of the custody action. On March 1, 2013, following a hearing, the district court entered an Order Granting Temporary Custody, Visitation and Modification of Restraining Order (hereafter "Temporary Custody Order"). The Temporary Custody Order provided, in part:

> 3.     It is in the minor child's best interest to preserve the
> status quo during the pendency of this case.
>
> 4.     Both parties agree the custody schedule has been:

---

[2] Before Mother moved to Denver in 2009, Father paid Mother $300.00 per month as child support. When Mother moved to Denver, Father increased that amount to $500.00 per month. These were the child support payments the parties had agreed upon and were not the result of a court order. After Mother returned to Cheyenne, the Wyoming Department of Family Services, on behalf of the State of Colorado, filed a Petition to Establish Support. In Civil Action No. 177-865, Father stipulated to an order of support that increased his monthly support obligation to $768.00 per month. That order did not address custody or visitation.

[3] Prior to Father's filing of the Petition to Establish Custody and Visitation, and Modify Child Support, there had been no court order that established custody or visitation.

A. [Mother] has the minor child every Monday from after school through Wednesday morning when the child is taken to school in the morning.

B. [Father] has [the] minor child every Wednesday when school is released for the day through Friday morning when the child is taken to school in the morning.

C. The parties alternate each weekend with the minor child. Weekends begin on Fridays after school is released and end Sunday evening at 6:00 p.m.

5. It is in the minor child's best interests that this allocation of time continue. Neither parent has expressed any safety concerns for the child if this schedule continues.

6. The division of parenting time, as stated in Paragraph 4 herein, will continue during the pendency of this case or until further order of this Court.

7. The *Ex Parte Temporary Mutual Restraining Order* is modified to allow both parties to temporarily leave the state of Wyoming with their child to visit friends and family during the pendency of the case.

[¶8] A two-day trial was held on the parties' custody dispute on December 11-12, 2014. During the trial, the district court heard testimony from several witnesses, including both parties. The court also received the in-chambers testimony of ADN, who testified that he would prefer to live with Mother. On February 4, 2015, the district court issued its decision letter announcing its decision to award primary custody to Father.

[¶9] On April 14, 2015, the district court issued its final order implementing its decision (hereafter "Final Custody Order"). The order established Father as the primary custodial parent and granted Mother liberal visitation rights. In particular, the order directed that Mother would have two months visitation during the summer vacation period, visitation of one weekend per month during the school year, twice a week phone or Skype visitation, alternating holiday visitation, and visitation each and every Spring Break. The order also addressed child support by directing Mother to pay Father child support in the amount of $200.88 per month.

[¶10] On May 11, 2015, Mother filed her notice of appeal to this Court, appealing the district court's Final Custody Order.

3

## STANDARD OF REVIEW

[¶11] This Court reviews district court decisions affecting child custody and visitation for an abuse of discretion. *Cook v. Moore*, 2015 WY 125, ¶ 7, 357 P.3d 749, 751 (Wyo. 2015). We have said:

> It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.
>
> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored.

*IC v. DW*, 2015 WY 135, ¶ 7, 360 P.3d 999, 1001 (Wyo. 2015) (quoting *Stevens v. Stevens*, 2014 WY 23, ¶ 8, 318 P.3d 802, 805–06 (Wyo. 2014)).

[¶12] In reviewing custody determinations, we have further stated:

> "The law affords wide discretion to the district court when fashioning custody and visitation provisions for the best interests of the children." *Pace* [*v. Pace*], [2001 WY 43,] ¶ 11, 22 P.3d [861,] 865 [(Wyo.2001)] (quoting *Reavis [v. Reavis]*, 955 P.2d [428,] 431 [(Wyo.1998)]). Such discretion "encompasses one of the most difficult and demanding tasks assigned to a trial judge." *Reavis*, 955 P.2d at 431. "Ultimately, the 'goal to be achieved is a reasonable balance of the rights and affections of each of the parents with paramount consideration being given to the welfare and needs

4

of the children.'" *Pace*, ¶ 11, 22 P.3d at 865 (quoting *Leitner* [*v. Lonabaugh*], 402 P.2d [713,] 720 [(Wyo.1965)]).

*Dahlke v. Dahlke*, 2015 WY 76, ¶ 14, 351 P.3d 937, 941 (Wyo. 2015) (quoting *Zupan v. Zupan*, 2010 WY 59, ¶ 13, 230 P.3d 329, 333 (Wyo. 2010)).

## DISCUSSION

[¶13]  Mother asserts two errors on appeal.  First, Mother contends that the district court abused its discretion in failing to give adequate weight to the status quo and the child's custody preference.  Second, Mother contends that the district court erred in treating its custody determination as an initial custody determination rather than as a modification of an existing custody order.  Because the question of whether the custody determination was properly treated as an initial custody determination dictates the required custody analysis, we will begin with Mother's second claim of error and then turn to her abuse of discretion argument.

### A.    Mother's Modification Argument

[¶14]  Mother claims that the district court erred in treating its ruling as an initial custody determination rather than as a modification of a custody order.  In particular, Mother argues that the Final Custody Order was an order modifying the Temporary Custody Order and because there was no showing of a material change of circumstances following the court's entry of the Temporary Custody Order, the court erred as a matter of law in modifying the Temporary Custody Order.  We disagree.  The Temporary Custody Order was not a final order subject to the modification provisions of Wyo. Stat. Ann. § 20-2-204(c), and entry of the Temporary Custody Order did not foreclose entry of a final custody order or change the framework for the district court's custody analysis.[4]

---

[4] Mother's modification argument is not one that was presented to the district court.  Mother directs us to no such argument below, and in our review of the record, we found no objection to the district court addressing the custody determination as an initial determination and no argument that the court was in some way bound by its Temporary Custody Order.  Generally, this Court will not address claims raised for the first time on appeal.  *Crofts v. State ex rel. Dep't of Game and Fish*, 2016 WL 97322, 2016 WY 4, ¶ 19, ___ P.3d ___ (Wyo. 2016) (quoting *Davis v. City of Cheyenne*, 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo. 2004)).   The question, however, of whether the district court's ruling was an initial custody determination or a modification of an existing order has jurisdictional implications, and because a challenge to a court's subject matter jurisdiction may be raised at any time, we will address the claim. *See Arnott v. Arnott*, 2012 WY 167, ¶ 14, 293 P.3d 440, 445 (Wyo. 2012) (quoting *Hanson v. Belveal*, 2012 WY 98, ¶ 18, 280 P.3d 1186, 1193 (Wyo. 2012)) ("The district court does not properly acquire jurisdiction to reopen an existing custody order until there has been a showing of 'a substantial or material change of circumstances * * * .'"); *City of Casper v. Holloway*, 2015 WY 93, ¶ 16, 354 P.3d 65, 70 (Wyo. 2015) (quoting *In re AGS*, 2014 WY 143, ¶ 15, 337 P.3d 470, 476 (Wyo. 2014)) (question of subject matter jurisdiction may be raised at any time at trial or appellate level).

[¶15] Although neither party argued below that the district court should treat its custody determination as a modification, the court began its custody analysis with a finding that its ruling would be an initial custody determination. The court stated:

> As a preliminary matter, the court believes it is appropriate to treat this action as an "initial custody determination," as opposed to a modification petition. While Docket 177-865 does require [Father] to pay child support to [Mother], no court has been previously called upon to make a factual determination as to who should be the primary custodial parent, what an appropriate parenting schedule should be, or what is in the best interests of A.D-N. in that regard.

[¶16] We agree with the district court. Before Father filed his Petition to Establish Custody and Visitation, and Modify Child Support in December 2012, no other order had been entered establishing custody and visitation. Because no order governing custody and visitation existed, there was no order to be modified, and the district court's determination was properly treated as an initial custody determination.

[¶17] Our conclusion is not affected by the district court's entry of its Temporary Custody Order. The custody modification statute restricts a district court's authority to "modify an order concerning the care, custody and visitation" of a child, and authorizes the modification only if either parent makes a showing of "a material change in circumstances since the entry of the order in question." Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2015). The question, then, is what constitutes "an order concerning the care, custody and visitation" of a child? Our precedent clearly answers that the statute limits the modification of a final order, not the modification of a temporary order.

[¶18] We have repeatedly observed that the material-change-in-circumstances showing required to support a custody modification balances the tension between the need for finality in orders and the need to address a child's best interests. *Cook*, ¶¶ 9-10, 357 P.3d at 752; *Kappen v. Kappen*, 2015 WY 3, ¶ 13, 341 P.3d 377, 382 (Wyo. 2015); *Arnott*, ¶ 14, 293 P.3d at 445; *Aragon v. Aragon*, 2005 WY 5, ¶ 9, 104 P.3d 756, 759 (Wyo. 2005). "Accordingly, a district court cannot reopen an existing custody order until the moving party establishes a 'material change of circumstances which outweigh[s] society's interest in applying the doctrine of res judicata[.]'" *Kappen*, ¶ 14, 341 P.3d at 382 (quoting *CLH v. MMJ (In re TLJ)*, 2006 WY 28, ¶ 8, 129 P.3d 874, 876 (Wyo. 2006)). In other words, we have recognized that the orders to which the Wyo. Stat. Ann. § 20-2-204(c) modification requirements apply are final orders that the doctrine of res judicata would otherwise bar reopening.

6

[¶19] Res judicata bars relitigation of previously litigated claims and applies where there is:

> (1) Identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them.

*Breen v. Black*, 2015 WY 96, ¶ 16, 353 P.3d 725, 729 (Wyo. 2015).

[¶20] Based on these factors, the district court's Temporary Custody Order was not an order subject to the Wyo. Stat. Ann. § 20-2-204(c) modification requirements, and entry of the temporary order did not foreclose entry of the Final Custody Order. By its plain terms, the Temporary Custody Order was strictly an interim order meant to apply only until a final custody determination was made. The sole issue it addressed was custody and visitation during the pendency of the parties' custody dispute. The question of which parent should ultimately have primary custody and the question of a visitation schedule based on that ultimate custody ruling were not questions litigated during the temporary custody hearing.[5] The Temporary Custody Order and the Final Custody Order addressed different concerns, and the doctrine of res judicata did not apply to bar entry of the Final Custody Order. The district court therefore did not err in treating its Final Custody Order as an initial custody determination.

## B.    Mother's Abuse of Discretion Argument

[¶21] Mother contends that the district court abused its discretion in awarding primary custody to Father because the decision failed to give sufficient weight to the status quo and to ADN's preference. We will first set forth the district court's explanation for its custody ruling and then address each factor Mother argues should have been given controlling consideration in making the determination.

[¶22] The district court explained its basis for granting Father primary custody of ADN as follows:

> The court has carefully considered and applied the factors set forth in Wyo. Stat. § 20-2-201 to the evidence received during trial. The court has also considered the above

---

[5] The Temporary Custody Order notes that both parties appeared at the hearing on temporary custody and that the court heard oral argument. The order does not indicate that the court took evidence on the child's best interests, the relative fitness of each parent, or travel and visitation concerns. Moreover, the Temporary Custody Order contained no findings concerning the statutory factors a court is required to consider in entering a divorce decree or custody order. *See* Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2015) (setting forth factors the court shall consider in determining the best interests of the child).

case-law and precedent of the Wyoming Supreme Court. After doing so, the court believes it is in the best interest of the child for both parents to have joint legal rights, but for [Father] to be the primary custodial parent.

As this court noted at the conclusion of the testimony, the hardest custody cases to decide are cases where both parents are decent parents. That is the situation here. Both parents clearly have a quality relationship with their son, and both love him very much. Moreover, both parents have the ability to provide adequate care and are fit to have custody of the child. Both are willing and able to accept the responsibility of parenting. This case turns largely on the "relative competency and fitness" of the two respective parents. While the evidence establishes that [Mother] is generally a good mother, the testimony establishes that [Father] is an exceptional father, and the court finds that A.D.-N. has more stability in his father's care.

The court notes that [Father] has a very stable career with the Air Force. The court finds credible and persuasive [Father's] testimony that there is a high likelihood that he will be able to finish his military career in Cheyenne, which provides additional predictability and stability for A.D-N.'s future. Furthermore, the court finds that [Father] has also historically demonstrated a more "steady hand" as a parent, has consistently made parenting decisions with A.D-N.'s best interests at stake. For example, the court found persuasive [Father's] testimony that he has generally given in to [Mother's] demands over the years in order to protect A.D-N. from the stress of a confrontation.

Additionally, [Father] is presently in a committed relationship with his wife, Brittany, and he has the ability to provide better financial and parenting support/care for A.D-N. [Father] has resided in Cheyenne for over 16 years and has a very stable lifestyle. Unlike [Mother], the court heard no testimony to suggest that [Father] has ever been cited with any criminal violations; nor has he been involved in any personal relationships that necessitated the filing for protection orders. The undisputed evidence establishes A.D-N. is doing well in school and that he has good friends in

8

Cheyenne. In sum, there is presently a lot of stability and certain[t]y in A.D-N.'s life in Cheyenne.

In contrast, the future for [Mother], with her intended move to Colorado Springs, involves much more uncertainty. [Mother] has made clear that she intends to move to Colorado, regardless of how this court rules on the custody issue. [Mother] testified that she wants to move to Colorado to be closer to "her family." She testified that she believes such a move would be in the child's best interests. However, she failed to adequately explain to this court's satisfaction any credible reason that would support her conclusion, other than a closer proximity to her own family. For example, she failed to convince this court or explain how uprooting A.D-N. from school, where he has friends and is doing very well, in the middle of the semester, was a good thing for her son. She also failed to articulate how moving her son a considerable geographic distance from his father, with whom he is very close, is in the child's best interests. While A.D-N. would certainly be closer to her family, he would be farther away from his natural father as well as from his friends at school. The evidence is undisputed that A.D-N. is a very good student who has close friends in Cheyenne. In short, the proffered reasons for [Mother's] move seemed to be more conducive to her own personal desires to be closer to her family, as opposed to looking out for her son's best interests.

The court also determines that [Father] has historically demonstrated a better ability to respect the rights of [Mother] as a parent, and more of a willingness to relinquish care to [Mother] at appropriate times. In contrast, the court is concerned with the testimony it heard as to the incident in Denver where [Mother] threatened to call the police while [Father] was exercising visitation, as well as [Mother's] emotional and inappropriate response when [Father] filed the present action seeking custody.

Finally, the court notes that the GAL has done an extensive investigation in this case and has recommended to this court that [Father] be made the primary custodial parent. The court agrees with the GAL's recommendation.

In sum, the court believes, based on all of the evidence, that [Father] has met his burden of proving that it is in the best interests of A.D-N. that [Father] be the primary custodial parent.

In making its determination, the court has given serious consideration to the stated preference of A.D-N. However, the court is not convinced that the child, who is only ten, is of a sufficient age or maturity to make a well-reasoned decision as to what is truly in his future best interests. His reasons for wanting to live with his mother, as opposed to his father, centered on the fact that his dad smokes, and that he would be closer to his mother's family in Colorado. It was clear to the court, however, that A.D-N. loves both his mother and his father, and that the child is okay living with either parent. Considering the totality of the circumstances, it is in A.D-N.'s best interest for his father to be the primary custodial parent.

## 1. **Consideration of Status Quo**

[¶23] Mother contends that the status quo—the shared custody arrangement the parties had when they both lived in Cheyenne—was a material factor deserving significant weight, and the district court abused its discretion in failing to give the factor consideration. This argument finds no support in the record.

[¶24] The district court did in fact give consideration to the parties' existing arrangement. In rejecting that arrangement as a workable option, the court explained:

It is abundantly clear to this court that the existing custody arrangement, with both parties equally splitting parenting time with the child, will no longer work in light of [Mother's] imminent relocation to Colorado. This court must therefore undertake an analysis of the factors set forth in W.S. § 20-2-201 and fashion an appropriate custody/visitation schedule that will take into consideration what is in A.D-N's best interests.

[¶25] The record supports the district court's reasoning. Mother did testify that she was moving to Colorado regardless of the court's custody ruling.

Q. Okay. If you moved to Colorado, you plan – let's talk about that. You plan to move to Colorado?

A.    Yes, I do.

Q.    We heard testimony earlier today that you plan to make that move, even if the court is not favorable to your position, correct?

A.    Yes.

[¶26]  The parties' status quo custody arrangement had the parties alternating weekends and changing custody of ADN throughout the school week. As the district court observed, that is not a practical arrangement if the parties live hours away from each other. We therefore find no abuse of discretion in the district court's rejection of the status quo as a custody option.

## 2.    <u>Consideration of Child's Preference</u>

[¶27]  Mother next contends that the district court abused its discretion by failing to give adequate weight to ADN's stated preference of living with Mother. We again find no abuse of discretion.

[¶28]  A child's custody preference, though not conclusive, is a factor that should be given serious consideration in determining custody. *Dahlke*, ¶ 18, 351 P.3d at 942. We have said:

> * * * We have long held that "the preference of a child of sufficient age and maturity is a factor to be considered by a court in ascertaining what is in the child's best interests." *Love v. Love*, 851 P.2d 1283, 1289–90 (Wyo.1993) (quoting *Roberts v. Vilos*, 776 P.2d 216, 218 (Wyo.1989)). We have identified several factors to consider in weighing a child's custodial preference:
>
> > [T]he age of the child; the reason for the preference; the relative fitness of the preferred and non-preferred parent; the hostility, if any, of the child to the non-preferred parent; the preference of other siblings; and whether the child's preference has been tainted or influenced by one parent against the other.
>
> *Roberts*, 776 P.2d at 219. "In addition, the preference which has a stated basis and is expressed in a plain manner should be accorded greater weight than one whose basis cannot be described." *Id*. at 218–19.
>
> * * * While it is true that a child's preference is only one

11

factor to consider, and that it cannot form the sole basis for a custody determination, a child's preference should be seriously considered when the child is of an appropriate age and maturity to assert such a preference. *Love*, 851 P.2d at 1291; *Mulkey–Yelverton v. Blevins*, 884 P.2d 41, 44 (Wyo.1994) ("A child's unequivocal preference to live with a particular parent is a factor to be considered, but the expression of a preference is not conclusive.").

> Courts have relied on children's preferences in granting custody where they were found to be "bright, communicative, understanding, and mature for their age," and the decision was "well-reasoned" and "not the product of coaching." *Hansen v. Hansen*, 327 N.W.2d 47, 49 (S.D.1982). We agree that the "welfare of the children * * * is not being served if their wishes are not considered by the trial court." *In re Marriage of Kramer*, 177 Mont. 61, 580 P.2d 439, 444 (1978). *See also*, *In re Custody of Maycelle D.*, 213 Mont. 225, 691 P.2d 410, 412 (1984). Though the child's preference is but one factor to consider, theses wishes should receive "serious consideration." *In re Marriage of Rolfe*, 216 Mont. 39, 699 P.2d 79, 87 (1985).

*Love*, 851 P.2d at 1290–91.

*Dahlke*, ¶¶ 17-18, 351 P.3d at 942.

[¶29] The district court's decision reflects that the court considered ADN's stated preference:

> In making its determination, the court has given serious consideration to the stated preference of A.D-N. However, the court is not convinced that the child, who is only ten, is of a sufficient age or maturity to make a well-reasoned decision as to what is truly in his future best interests. His reasons for wanting to live with his mother, as opposed to his father, centered on the fact that his dad smokes, and that he would be closer to his mother's family in Colorado. It was clear to this court, however, that A.D-N. loves both his mother and his father, and that the child is okay living with either parent. Considering the totality of the

circumstances, it is in A.D-N.'s best interest for his father to be the primary custodial parent.

[¶30] Mother acknowledges the district court's consideration but argues the district court improperly discounted ADN's preference without first holding a competency hearing. This argument misses its mark. The district court did not find ADN incompetent to testify. The court simply was not persuaded that ADN was mature enough to decide what was in his best interest. Given ADN's testimony, we cannot say the court abused its discretion in so concluding.

[¶31] On examination by the court, ADN testified:

> Q. * * * Are there things that you don't like when you're spending time with your mom or with your dad?
> A. No.
> Q. So when you're there, you're pretty happy either place?
> A. Yeah.
> Q. Okay. I know this is really a hard question to ask you, but I'm going to ask it to you.
> Where would you prefer to live?
> A. I want to live with my mom.
> Q. Can you tell me why?
> A. Um, I – well, 'cause my mom – my dad is mostly nice. I've been asking him to quit smoking, then he's trying to. He hasn't been able to. And I think I want to live with my mom so I can see my family more.

[¶32] On examination by the GAL, ADN testified:

> Q. Okay. You know that I said to the Court that I thought you ought to live with your dad, didn't you?
> A. Yeah.
> Q. If the Court does that, would you be okay with that?
> A. If I had to live with my dad, I would be okay.
> Q. If you had to live with your mom, you would be okay, too, wouldn't you?
> A. (Witness nodded head.) Yeah.

[¶33] On examination by Father's counsel, ADN testified:
> Q. Is it fair to say you don't want to hurt anybody's feelings?

13

A. Kind of, yeah.
Q. You don't want to be put in the middle?
A. No.
Q. Would you rather somebody else make the decision on where you live rather than you?
A. Yeah.

[¶34] On examination by Mother's counsel, ADN testified:

Q. * * * So you don't want to be put in the middle. Do you want the judge to hear what your preference is?
A. Um, I don't know what that means.
Q. Did you want to come here today to talk to the judge? Was that something you wanted to do?
A. Um, not really, huh-uh.
Q. You didn't really want to be here?
A. No.
Q. Do you want the judge to listen to you now that you're here?
A. Yeah.

[¶35] ADN's testimony shows that although ADN expressed a custody preference, he showed no hostility toward either parent and stated he would be okay living with either parent. He also, probably consistent with his age of ten, expressed his desire that someone other than him make the custody decision. We recognize that a trial court, having heard and witnessed testimony, is in the best position to weigh the evidence and determine its place in the court's custody analysis. *Dahlke*, ¶ 16, 351 P.3d at 942. Given the tenor of ADN's testimony, we cannot say that the district court acted unreasonably in concluding that ADN lacked the maturity to make a well-reasoned decision concerning his best interests. We therefore find no abuse of discretion in the court's decision to award custody in a manner that was contrary to ADN's stated preference.

## CONCLUSION

[¶36] The Temporary Custody Order was not a final order subject to the modification requirements of Wyo. Stat. Ann. § 20-2-204(c), and the district court thus did not err in treating its Final Custody Order as an initial custody determination. Additionally, we find no abuse of discretion in the district court's consideration and weighting of the status quo and the child's custody preference in making its custody determination. Affirmed.

14